452 A.2d 997

**Mary E. REED, Widow of James T. Reed, Appellant**

**v.**

**COMMONWEALTH of Pennsylvania, WORKMEN'S COMPENSATION APPEAL BOARD and Stork Diaper Service, Inc., Appellee.**

**Ruth DUMAS, Widow of Louis Dumas, Deceased, Appellant**

**v.**

**COMMONWEALTH of Pennsylvania, WORKMEN'S COMPENSATION APPEAL BOARD and Latrobe Forge & Spring, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 18, 1981.

Decided Dec. 23, 1981.

Reargument Granted May 10, 1982.

Reargued Sept. 20, 1982.

Decided Dec. 2, 1982.

Edwin H. Beachler, McArdle, Caroselli, Spagnolli & Beachler, Pittsburgh, for appellant at No. 31.

David F. Kaliner (Deceased), Edward B. Joseph, Philadelphia, for appellant at No. 797.

Clem R. Kyle, Mary J. McCrory, Kyle & Ehrman, Pittsburgh, for Latrobe Forge and Spring.

Louis L. Kaplan, Harrisburg, Secretary, W.C.A.B., for appellee at No. 31.

Lowell A. Reed, Jr., Philadelphia, for Stork Diaper Services, Inc., for appellees at No. 797.

OPINION

LARSEN, Justice.

These cases present a question of first impression under the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 1 *et seq.:* Whether an employe's right to receive specific loss compensation rather than total disability compensation after the loss of "both hands or both arms or both feet or both legs or both eyes" within the meaning of 77 P.S. § 513(23) survives him.

Under the Act, an employe who has lost both legs or the use of both eyes may receive either total disability compensation or compensation for his specific losses. 77 P.S. § 513 provides:

> For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
>
> (5) For the loss of a lower leg, sixty-six and two-thirds per centum of wages during three hundred fifty weeks.
>
> (6) For the loss of a leg, sixty-six and two-thirds per centum of wages during four hundred ten weeks.
>
> (7) For the loss of an eye, sixty-six and two-thirds per centum of wages during two hundred seventy-five weeks.
>
> (23) Unless the board shall otherwise determine, the loss of both hands or both arms or both feet or both legs or both eyes shall constitute total disability, to be compensated according to the provisions of clause (a) [77 P.S. § 511].[1]

Total disability benefits awarded under 77 P.S. § 513(23) and paid according to the provisions of 77 P.S. § 511 are "payable for the duration of total disability." Since the injuries for which total disability compensation may be awarded under 77 P.S. § 513(23) are permanent in nature, such compensation terminates only upon the employe's death. Specific loss payments awarded pursuant to 77 P.S.

1. 77 P.S. § 513(25) also provides additional compensation for a healing period for each of these injuries.

§ 513, however, do not terminate upon the employe's death from an unrelated cause. 77 P.S. § 541 provides:

Should the employe die from some other cause than the injury, payments of compensation to which the deceased would have been entitled to [sic] under section 306(c)(1) to (25) [77 P.S. § 513(1) to (25)] shall be paid to the following persons who at the time of the death of the deceased were dependents ...:

(1) To the surviving widow or widower if there are no children under the age of eighteen.

It is within this statutory framework that we must consider the following cases.

In 1974, James T. Reed suffered work-related injuries which resulted in the loss of both legs.[2] On March 26, 1976, Reed and appellee, Stork Diaper Service, Inc., entered into a Supplemental Agreement providing that as of June 12, 1975, "the loss of both legs shall constitute total disability, unless the Appeal Board otherwise determines."[3] Reed received total disability payments for 82 weeks, until his death from an unrelated cause, congestive heart failure, on July 15, 1976. On July 27, 1976, appellant Mary E. Reed filed a petition alleging that appellee's insurer had "refused to make any further payments to decedent's Widow, as required by the Workmen's Compensation Act, Section 306(g(1)) [77 P.S. § 541(1)], after July 15, 1976."

A referee granted appellant's petition and awarded appellant "the remaining balance of specific loss compensation due to Claimant's decedent at the time of his death on 7/15/76, based on a total of 810 weeks for the specific loss of both legs and Claimant's appropriate healing periods...."[4]

**2.** Reed's right leg was amputated in 1974, and his left leg was amputated in June, 1975.

**3.** Prior to June 12, 1975, Reed received compensation for the specific loss of his right leg.

**4.** This award was computed on the basis of 350 weeks compensation for the loss of a lower leg, 410 weeks compensation for the loss of a leg, and a 25 week healing period for the loss of each leg. *See* 77 P.S. § 513(5), (6), (25).

The Workmen's Compensation Appeal Board reversed, and the Commonwealth Court affirmed. *Reed v. Workmen's Compensation Appeal Board,* 52 Pa.Commw. 325, 415 A.2d 974 (1980).

In 1974, Louis Dumas suffered work-related injuries which resulted in the loss of use of both eyes. On September 25, 1974, appellee, Latrobe Forge & Spring, Inc., filed a Notice of Compensation Payable stating that "[c]laimant sustained foreign body in both eyes" and granting him payments "until employe returns to work without loss of income or disability otherwise ceases. . . . " Dumas received these payments for 65 weeks, until his death from unrelated causes on November 28, 1975.[5] On December 5, 1975, appellant Ruth M. Dumas filed a petition alleging that Dumas' eye injury "is a permanent injury and constitutes a specific loss."

A referee awarded compensation for the loss of use of both eyes, and ordered that payments be made to appellant "for a period of 550 weeks and for a healing period of 10 additional weeks," with credit for payments made prior to Dumas' death.[6] The Workmen's Compensation Appeal Board vacated the referee's award and dismissed appellant's petition, and the Commonwealth Court affirmed. *Dumas v. Workmen's Compensation Appeal Board,* 55 Pa.Commw. 459, 423 A.2d 476 (1980).

With respect to Reed, the Commonwealth Court held that he had chosen to receive total disability compensation and concluded that once he had made this choice, the right to choose another form of compensation did not survive him and could not be modified upon petition by his widow. *Reed, supra,* 52 Pa.Cmwlth. at 330, 415 A.2d at 977. With respect to Dumas, after concluding that his widow had no standing to petition for review of her husband's compensation agreement, the Commonwealth Court stated that he had exercised his right to choose the type of compensation

5. The record does not reveal the precise cause of Dumas' death.

6. This award was computed on the basis of 275 weeks compensation for the loss of each eye. *See* 77 P.S. § 513(7).

he wished to receive and that his choice could not be altered or defeated after his death. *Dumas, supra,* 55 Pa.Cmwlth. at 464, 423 A.2d at 478. We granted allocatur in both cases and we now reverse.

■ We have noted that "[i]n the usual case total disability payment would be the most beneficial to a claimant, since its payment is not limited to a term of weeks as is specific loss payment." *Turner v. Jones & Laughlin Steel Corporation,* 479 Pa. 618, 621, 389 A.2d 42, 43 (1978). However, as we recognized in *Turner,* there are circumstances which make it economically advantageous for an employe to receive compensation for his specific losses rather than total disability compensation. *Id.* One of these circumstances is an employe's concern for his survivors. *Id.,* 479 Pa. at 622, 389 A.2d at 44.

In *Turner,* we upheld the authority of the Workmen's Compensation Appeal Board to modify an employe's benefits from total disability to specific loss compensation during the employe's lifetime in order to provide the employe with the most economically advantageous benefits to which he is entitled. We held that

this section [77 P.S. § 513(23)] explicitly gives to the Board the discretion to determine the optimum benefit available to a claimant within the statutory scheme.... The only reasonable interpretation of Section 306(c)(23) [77 P.S. § 513(23)], especially in light of our duty to resolve borderline interpretations in favor of the injured employe ..., is that the legislature intended by this section to provide for the highest possible compensation for a claimant who has lost both legs. In most cases this is compensation based on total disability. The legislature nevertheless empowered the Board to determine otherwise should another provision prove more advantageous to the claimant. We can conceive of no other purpose for the exception contained in Section 306(c)(23).... There is nothing in the Act which requires that appellant be com-

pensated under the schedule for total disability when he has met the burden of proof for specific loss compensation. *Id.,* 479 Pa. at 627, 389 A.2d at 46.

An employe's right to petition the Board for a change of benefits from total disability to specific loss compensation in order to protect his dependents amounts, in essence, to an entitlement under which the employe may elect which type of compensation he wishes to receive. We recognized this in *Turner* when we specifically disagreed with the appellee's contention that no election was permissible under 77 P.S. § 513(23). *Id.,* 479 Pa. at 626, 389 A.2d at 46.

In this case, it would clearly have been economically advantageous for Reed and Dumas to have elected to receive specific loss compensation prior to their deaths. However, there is no evidence that either of these men had any way of knowing this during their lives, and we do not believe that appellants should now bear the burden of their husbands' inability to foresee their deaths.

The denial of claims such as appellants' affords a surviving spouse whose decedent has lost only one leg greater benefits than a surviving spouse whose decedent has lost both legs if he does not outlive the number of weeks during which he would be entitled to payments for his specific losses, and if he unwittingly continues to receive total disability payments during his lifetime. For example, an employe who loses only one leg is entitled to receive benefits for 410 weeks, and if he dies after receiving only 82 weeks of benefits, his surviving spouse will receive benefits for the remaining 328 weeks; either the employe or his dependents will receive the full amount of compensation to which his injury entitles him. However, if an employe loses both legs, he is considered to be totally disabled and his compensation terminates upon his death, even if that death occurs after only 82 weeks of benefits, and even though the employe would have been entitled to receive 820 weeks of compensation for the specific loss of both legs had he been provident

enough to so elect during his lifetime.[7] Precisely the same inequity results for an employe who loses the use of both eyes as compared to an employe who loses the use of only one eye.[8]

Thus, although employes who have suffered "the loss of both hands or both arms or both feet or both legs or both eyes" are entitled, during their lifetimes, to elect and re-elect to receive either total disability benefits or specific loss benefits, see *Turner, supra,* were we to hold that the right to elect did not survive the employe, we would force all such employes into the position of having to guess, during their lifetimes, whether or not they will live longer than the number of weeks of specific loss compensation to which they would be entitled. This we will not do.

Such an imposition is clearly inconsistent with an Act which is "remedial in nature" and which is to be "liberally construed, with borderline interpretations resolved in favor of the injured employe," and whose legislative purpose is "to provide for the highest possible compensation for a claimant who has lost both legs [or the use of both eyes]." *See Turner, id.,* 479 Pa. 627 at 629, 389 A.2d 46 at 47. In addition, an interpretation of the Act which provides greater

7. This disparity cannot be justified on the grounds that specific loss compensation and total disability compensation serve different purposes within the act. We have held that total disability payments awarded pursuant to 77 P.S. § 511 "are intended as compensation for *loss of earning power,* based not upon specific injuries but on the totality of the claimant's condition," while specific loss payments awarded pursuant to 77 P.S. § 513 are "intended specifically to compensate a claimant for the *loss of use* of designated bodily members rather than for general loss of earning power." *Turner, supra,* 479 Pa. at 621, 389 A.2d at 43 (emphasis in original). Thus, even though these two types of compensation seek to achieve different goals and, therefore, need not necessarily produce the same results, the fact remains that it is *only* those employes who have suffered *two* specific losses—the loss of both legs or the loss of use of both eyes—and who deserve to be compensated *twice* for the loss of use of specific bodily members, who are considered to be totally disabled and who thereby stand to receive less benefits.

8. For each of these injuries and for each type of compensation, the amount of benefits paid is the same: 66-$\frac{2}{3}$% of the employe's wages. It is only the length of time during which such compensation is paid that varies from case to case. *See* 77 P.S. §§ 511, 513.

compensation for the loss of one leg or the loss of use of one eye than it does for the loss of both legs or the loss of use of both eyes is both absurd and unreasonable and cannot stand.[9]

Our conclusion is not based solely upon considerations of policy and fairness; the provisions of the Act itself also support appellants' claims.

Under 77 P.S. § 541, "payments of compensation to which the deceased would have been entitled" under 77 P.S. § 513(1) to (25) continue after the employe's death. In this case, both Reed and Dumas were entitled to receive specific loss payments under 77 P.S. § 513 during their lives in order to protect their dependents. Thus, the terms of 77 P.S. § 541 required that such payments continue after their deaths. Where an employe qualifies for and is receiving total disability compensation prior to his death pursuant to 77 P.S. § 513(23), his dependents must be permitted to receive the balance of specific loss payments which would have been due him at the time of his death, had he elected during his lifetime to receive specific loss compensation.[10] In this way, an employe and his dependents will be assured of receiving whichever type of compensation yields the greater benefits, and the type of compensation will be based upon the facts once they have become known rather than upon the employe's speculations during his lifetime.

▇▇▇ Further, we hold that appellants' claims are procedurally sound. 77 P.S. § 771 provides:

A referee of the department may, at any time, review and modify . . . a notice of compensation payable and an

---

**9.** In ascertaining the intention of the legislature in the enactment of a statute, we must presume that "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1).

**10.** Nothing in *Turner* limits the right to elect under 77 P.S. § 513(23) to the employe's lifetime. In fact, in view of the Act's legislative purpose to provide "the optimum benefit available to a claimant within the statutory scheme" and "the highest possible compensation for a claimant who has lost both legs," it makes sense to allow an election of benefits after an employe's death.

original or supplemental agreement upon petition filed by either party with the department, . . . if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

This section makes it clear that a referee may modify an agreement or a notice of compensation payable at *any* time, even after the death of the employe. In addition, appellants are proper parties to file petitions under this section since they have a substantive right to receive benefits under 77 P.S. § 541.[11]

■ Finally, we note that both the notice of compensation payable and the supplemental agreement involved in this case were subject to modification under 77 P.S. § 771 because each was, in some material respect, incorrect. In *Turner,* we held that this section "justifies modification of a compensation agreement for mistake of fact or law." *Id.,* 479 Pa. at 628, 389 A.2d at 47. The supplemental agreement and notice of compensation payable in this case were both materially incorrect in that they violated the purpose of the Act by failing to provide the highest compensation possible.

The referees' awards in this case granting appellants specific loss benefits and giving credit for compensation already paid were proper. No injustice has been done to appellee employers by these awards, since they are in precisely the same position in which they would have been had Reed and Dumas elected to receive specific loss benefits during their lifetimes.

Accordingly, the orders of the Commonwealth Court are reversed and the awards of the referees are reinstated.

O'BRIEN, C.J., filed a dissenting opinion in which ROBERTS and HUTCHINSON, JJ., joined.

11. A "party" is "*[a] person concerned* or having or taking part *in any affair, matter, transaction, or proceeding,* considered individually." Black's Law Dictionary 1278 (rev. 4th ed. 1968) (emphasis added).

O'BRIEN, Chief Justice, dissenting.

The issue in this case is whether specific loss compensation, which is not elected during an injured employee's lifetime, can be subsequently elected by his survivors, thereby enabling them to receive the balance of the unpaid specific loss benefits to which the employee would have been entitled at the time of his or her death.

The majority opinion permits appellants to prevail in their petitions seeking to modify their deceased husbands' benefits from total disability to specific loss. In doing so, the majority holds that the right to make such an election survives the death of the employees who have suffered the work-related loss of both hands, arms, feet, legs, or eyes. The rationale for this result is that the Pennsylvania Workmen's Compensation Act (hereinafter "Act") is remedial in nature and must be liberally construed to provide the highest possible compensation for such claimants.

While I endorse wholeheartedly the spirit and purpose of the Act, I do not concur in a reading which renders the actual provisions and literal meaning of the legislatively authorized words a nullity.

Undeniably, total disability benefits in the majority of cases are the most beneficial to a claimant since payment is not limited to a term of weeks. Specific loss compensation, on the other hand, has the advantage of being payable to the claimant's survivors if he dies before the expiration of the specific loss period from a cause unrelated to his compensable injury. The reason the legislature provided that total disability benefits cease when the claimant is no longer disabled or when he dies is because these benefits serve as compensation for loss of earning power. *Turner v. Jones & Laughlin Steel Corp.,* 479 Pa. 618, 389 A.2d 42 (1978); *Killian v. Heintz Div. Kelsey Hayes,* 468 Pa. 200, 360 A.2d 620 (1976); *Borough of Catawissa v. Shultz,* 9 Pa.Cmwlth. 546, 308 A.2d 633 (1973); *Marshall v. City of Altoona,* 208 Pa.Super. 465, 222 A.2d 408 (1966). The need to compensate a claimant for that loss ceases when that loss terminates by the death of the claimant for reasons unrelated to his injuries.

Specific loss benefits are intended to compensate a claimant for the loss of use of designated parts of the body. If a claimant elects to receive these, he has in effect chosen a sum certain, payable over an extended number of weeks. When viewed in this light, it is reasonable that the legislature provided for this settlement to be payable to the claimant's survivors should the claimant die.

The claimant has the right, during his lifetime, to seek a change of benefits pursuant to section 413 of the Act, 77 Pa.C.S.A. § 771. That section provides:

"A referee of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such referee, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect."

In *Turner v. Jones & Laughlin Steel Corp., supra,* we permitted a recipient of total disability compensation to make an election during his lifetime between those benefits and specific loss benefits. The employee, because of the nature of his injury, met the burden of proof for specific loss benefits as well as total disability benefits; consequently, we upheld the modification order entered by the referee.

The majority extends this right to the claimant's dependents, in spite of the clear unambiguous language of section 413 of the Act limiting this right to "parties" to the agreement. The legislature, in drafting this provision, did not extend this right to an injured employee's dependents. This failure to do so cannot be viewed as an oversight because the legislature was undeniably familiar with such language. *See, e.g.,* 77 P.S. § 731 "[E]mploye *or his dependents* may agree upon compensation . . ."; 77 P.S. § 733, "Whenever an agreement . . . shall be executed between an employer . . . and an employe *or his dependents. . . .*" (Emphasis added) Rather, the legislature restricted the filing of any petitions seeking a review or modification of a compensation agreement to the injured employee.

The conclusion that the legislature did not intend to permit posthumous exercise of modification rights is consistent with this Court's past pronouncement that an award for total benefits, being for the balance of the decedent's life, is extinguished by his death. *Kujawa v. Labtrobe Brewing Co.*, 454 Pa. 165, 312 A.2d 411 (1973). Moreover, in *Turner v. Jones & Laughlin Steel Corp., supra,* we recognized that survivor benefits may be one consideration for a claimant choosing specific loss benefits. If the survivors could always seek such benefits by filing a petition for review after the death of the claimant, our discussion of the advantages to specific loss benefits would have been unnecessary. I do not believe that is the case, however, because as we impliedly held in *Turner,* and as I would hold here, the opportunity for review granted by the Act must be exercised by the claimant during his lifetime.

This issue has been studied by the Commonwealth Court in *DeMontis v. Workmen's Compensation Appeal Board,* 34 Pa.Cmwlth. 225, 372 A.2d 950 (1977). Reargument was granted therein to review the initial disposition after *Turner* was filed, and the original result was affirmed at 34 Pa. Cmwlth. 232, 383 A.2d 259 (1978). While this decision is not binding upon us, I am convinced that the Commonwealth Court's thoughts on this subject are instructive.

In *DeMontis,* the claimant was injured on his job and initially received total disability. After a period of time, he executed a supplemental agreement whereby he received partial disability and returned to work. After his death from unrelated causes, his wife filed a petition for review and modification of the supplemental agreement. The Commonwealth Court ruled that the employee's wife had no claim based upon her husband's disability compensation payments where no petition for review had been filed by him during his lifetime. Moreover, the court reasoned, after closely reviewing the relevant positions of the Act:

"These provisions of the Act particularly demonstrate that when the legislature intended to provide benefits to survivors, as it did with respect to specific loss of members and death as the result of compensable injuries, it clearly

so provided. Since it made no provision for benefits to survivors with respect to awards of or agreements for the payment of compensation for disability under Subsections (a) and (b) of Section 306, 77 P.S. §§ 511, 512, no rights to any exist. The law is that awards and agreements for compensation for disability are extinguished by the death of the worker."

*DeMontis v. Workmen's Compensation Appeal Board, supra,* 34 Pa.Cmwlth. at 229–30, 372 A.2d at 952. Finally, it reaffirmed our holding in *Kujawa* that disability agreements are extinguished at the death of the worker. Consequently, there is no existing agreement which could be the subject of a petition for review after a claimant's death.

The majority's holding in the present case in effect guarantees that a minimum amount of compensation will be paid to survivors of those claimants who elected to receive total loss benefits and subsequently died from unrelated causes. I am unconvinced that such an entitlement is proper.

I dissent.

ROBERTS and HUTCHINSON, JJ., join in this opinion.