562 A.2d 419

**ACME MARKETS, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HOPIAK), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 19, 1989.

Decided July 19, 1989.

554

Matthew D. Dempsey, Lenahan & Dempsey, P.C., Scranton, for petitioner.

Donald T. Rogers, Lowery, Ciavarella & Rogers, Wilkes–Barre, for respondents.

Before CRUMLISH, Jr., President Judge, COLINS, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

Acme Markets, Inc. (Employer) appeals a decision by Referee Arthur Piccone granting specific loss benefits to Walter Hopiak (Claimant), which was affirmed by the Workmen's Compensation Appeal Board (Board).

The Claimant was injured June 8, 1981, when he fell off the back of a truck while in the course of his employment. He sustained injury to his right thumb and was driven to the hospital by his Employer for emergency room treatment. On June 12, 1981, an Employer's Report of Occupational Injury was filed listing Claimant's injury to his right thumb.

On December 8, 1981, Claimant was again injured in a truck accident while in the course of his employment. He sustained further damage to his thumb, as well as multiple cuts and lacerations to his body, one of which created a visible scar on his face. A Notice of Compensation Payable dated December 23, 1981 provided Claimant with disability benefits for the lacerations and contusions to the total body. The Employer filed a Termination Petition, and Referee Mark Peleak found that Claimant had finally recovered from the effects of these injuries on March 24, 1982. Thus, these disability benefits were halted.

In June 1983, Claimant again suffered a disabling injury while on the job for which he received total disability benefits commencing September 4, 1983, and lasting until

his death.[1] This injury caused aggravation of an underlying cancer condition and was totally unrelated to the previous injuries.

On or about January 26, 1984, Claimant filed a Claim Petition for benefits alleging specific losses of the use of his right thumb in the June accident and disfigurement from permanent scarring resulting from the December accident. After multiple hearings, his petition was granted by Referee Piccone and affirmed by the Board. His award consisted of specific loss payments for his thumb from June 8, 1981 and for his scar from March 24, 1982.[2]

Employer raises three issues in this appeal. The first is that the Board erred in determining that the Claimant met his burden of proof in establishing permanent loss of use of his thumb. The second argument alleges that notice of the specific loss of use of the thumb was not established until Claimant filed his claim petition in 1984, and thus the awarding of interest back to the date of the injury is an error of law. Finally, Employer argues that the Board erred in awarding compensation benefits for specific loss to run concurrently with other benefits being paid by the same Employer. In addressing each of these issues we note that our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law committed, or whether necessary findings of fact are supported by substantial competent evidence. *Crown, Cork & Seal Corp. v. Workmen's Compensation Appeal Board (Savini)*, 117 Pa.Commonwealth Ct. 242, 543 A.2d 603 (1988).

The issue of loss of use of an extremity is a question of fact to be resolved by the referee. *Dally v. Workmen's Compensation Appeal Board (Pullman Stan-*

---

1. While the fact of Claimant's death is noted in Employer's brief to this Court, the exact date of death is not of record.

2. According to Section 306(d) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513, when a specific loss is sustained as a result of an incident which caused a temporary total disability, the payment of total disability benefits precedes that of benefits for specific loss.

*dard),* 82 Pa.Commonwealth Ct. 291, 474 A.2d 1215 (1984). The party seeking to establish a specific loss must show that he has suffered the permanent loss of use of the injured part of his body for all practical intents and purposes. *Id.*

■ Employer first alleges that the evidence is insufficient to support the referee's finding that the Claimant lost the use of his thumb for all practical intents and purposes. The referee was presented with medical testimony from both sides, as well as Claimant's own testimony, regarding the injury to the thumb and the degree of loss of use. Although the opinions of the medical witnesses conflict, Referee Piccone found the testimony of Dr. Barakat and Claimant to be more credible than that of Employer's medical witness, Dr. Nissenbaum. From a review of the record, we find that there is substantial competent evidence to sustain the referee's findings of fact.

■ Employer further argues that since there is a possibility of surgical correction of the thumb, Claimant's injury is not permanent, and thus he has failed to sustain his burden of proof. It cites the testimony of Dr. Barakat, as well as the Pennsylvania Supreme Court decision in *Joyce Western Corp. v. Workmen's Compensation Appeal Board,* 518 Pa. 191, 542 A.2d 990 (1988), to support its contention that there is a reasonable surgical treatment to correct Claimant's problem.

In cross-examination during his May 1985 deposition, Dr. Barakat testified that he recommended surgery to Claimant when he examined him in August 1984, three years after the initial injury. The doctor also stated that his prognosis regarding success would be guarded in view of the length of time since the initial surgery. Claimant, in his June 1984 testimony, was briefly asked whether surgery had ever been recommended to him. He replied that he had been told by Dr. Raklewicz, whom he was seeing for the thumb, that it would not help. No other medical witness was

questioned directly about his opinions relative to the possibility of surgery or the chances of its success.

In *Joyce Western,* a specific loss case, the Court discussed the issue of when surgical measures may be said to be reasonable. In so doing, it relied upon its previous holding in *Muse v. Workmen's Compensation Appeal Board,* 514 Pa. 1, 522 A.2d 533 (1987), a total disability case in which the claimant was alleged to have refused reasonable surgery. In *Muse,* the Court stated, "[t]he statute requires an employer to place evidence on the record that proposed medical services are reasonable." *Id.,* 514 Pa. at 7, 522 A.2d at 536. In *Joyce Western,* the Court clarified *Muse* by
stating, "[i]f the evidence establishes that the recommended surgery involves *minimal risk* to the patient and offers a *high probability* of success, the proposed surgery is reasonable...." *Id.,* 518 Pa. at 202, 542 A.2d at 996 (emphasis in original). Since the question of reasonableness of the available surgery was not addressed by the referee in that case, the Court remanded for factual findings consistent with such an inquiry.

In the present case, the only evidence placed on the record by Employer regarding proposed medical treatment was in its cross-examination of Dr. Barakat. Dr. Barakat was not questioned regarding the degree of risk of the surgery he recommended, and, in response to the Employer's questions regarding the probability of success of the surgery, stated that his prognosis was guarded. We cannot conclude that this testimony could serve as the basis for a factual finding that this surgery would be "reasonable" under the *Joyce Western* criteria. If, in fact, such a surgical procedure existed which would restore the function of Claimant's thumb, it was incumbent upon the Employer to adduce evidence to that effect. Employer here failed to avail itself of that opportunity, which distinguishes its position from that of the employer in *Joyce Western.*

The second argument advanced by Employer involves the issue of notice and interest payments. Employer asserts that the interest awarded by the referee should date

back only to January 26, 1984, the date Claimant filed a claim petition, since this was the first time Employer had any notice that Claimant suffered a loss of use of his thumb.[3] For the following reasons, we agree.[4]

The pertinent findings of fact of the referee can be summarized as follows: Claimant suffered the loss of use of his right thumb for all practical intents and purposes *as a result of* the injury of June 8, 1981. Claimant promptly notified his Employer of the *injury*. Claimant *never filed for nor received compensation* for an injury to his thumb and never entered litigation for the loss of his thumb.

As previously stated, the referee's finding that Claimant suffered a loss of use for all practical intents and purposes is supported by substantial evidence and will not be disturbed. However, the referee's conclusion that notice of the loss of use was given as of the date of the injury is not supported by the record. Section 406.1 of the Act, 77 P.S. § 717.1, provides, in part: "The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum."

"Although an employer's actual knowledge of the occurrence of an injury obviates the necessity for a claimant to give notice, the employer's knowledge must be sufficient to apprise him of a *compensable* injury." *Van Patton v. Workmen's Compensation Appeal Board (Scott Paper Co.)*, 86 Pa.Commonwealth Ct. 538, 542–43, 485 A.2d 541, 543 (1984). Since Claimant did not file for nor receive any compensation for the injury to his thumb, as found by the referee and supported by the evidence, the only way Em-

**3.** Section 306(c)(9) of the Act, 77 P.S. § 513(9), contains a schedule of the exclusive compensation payable for permanent injuries; for the loss of a thumb, the claimant is entitled to benefits of sixty-six and two-thirds percent of wages during one hundred weeks.

**4.** We note that Claimant, in his brief, asserts that Employer waived this issue by failing to raise it properly below. We disagree, inasmuch as Employer's contention below was that no notice was given to it of a thumb loss until January of 1984, and thus the referee erred in awarding benefits and interest from the date of the injury.

ployer could have received notice of the compensable loss of use is through actual knowledge of the disability caused by the injury. The record shows that Claimant returned to work the day following the accident, and Claimant himself testified he never missed any work as a result of the injury. Further, there is insufficient evidence in the record from which it could be inferred that Claimant told Employer about the pain and loss of use he was experiencing. While the record clearly shows that Employer had notice of Claimant's injury to his thumb, a point which Employer does not dispute, this is not enough to constitute knowledge of a specific loss of use.

In *Hutz v. Workmen's Compensation Appeal Board (Stefanak & Son)*, 116 Pa.Commonwealth Ct. 162, 540 A.2d 1380 (1988), this Court upheld a Board order amending a referee's order to reflect that compensation for a specific loss award became due and payable twenty-one days from the date a modification petition was filed by the claimant asserting a specific loss. Hutz sustained an injury to his hand in 1973 for which he received workmen's compensation pursuant to a Notice of Compensation Payable. The Court decided that although the employer had knowledge of the initial injury, there was not sufficient evidence to conclude that it had notice of Hutz's specific loss of use of his hand for all practical intents and purposes until he filed his modification petition in 1982.

In the present case, Claimant maintained that throughout the period he continued to work he had pain and difficulty performing tasks both on and off the job. Claimant was seeing Dr. Gabriel Klem, the company physician, on a regular basis beginning December 10, 1981 and continuing through March 1982 as a result of his December 8 accident. From February to March Claimant repeatedly complained of pain in his thumb. However, the record does not reveal that Claimant, during his visits with Dr. Klem, asserted that the pain was affecting his ability to perform his work duties or that it interfered with the normal functioning of his thumb.

Thus, we find Claimant's failure to file for compensation for the initial injury, combined with his continued presence at work and his failure to inform his Employer of any difficulty in using his thumb either at work or otherwise due to the injury, cannot support the referee's finding that Claimant notified Employer of his specific loss until the claim petition was filed January 26, 1984. Accordingly, we modify the referee's amended order awarding benefits as of the date of the injury to reflect an award of interest and benefits beginning twenty-one days from the date of notice of the specific loss, January 26, 1984.

■ The final issue Employer raises for our consideration concerns the concurrency of benefit payments for Claimant's specific losses and total disability. Employer argues that Section 306(d) of the Act specifically provides for the consecutive payment of benefits:

Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in clause (c) of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the employe shall not receive compensation provided in clause (c) of this section for the specific healing period.

It is well established that a claimant for workmen's compensation benefits is entitled to total disability benefits, in addition to benefits for specific loss, where there is a destruction, derangement, or deficiency in organs of other parts of the body resulting from the same injury. *Truck Lubricating & Washing Co. v. Workmen's Compensation Appeal Board,* 54 Pa.Commonwealth Ct. 495, 421 A.2d 1251 (1980). Further, the disability must be separate and distinct from that which normally follows a specific loss injury. *Crucible, Inc. v. Workmen's Compensation Appeal Board (Pope),* 120 Pa.Commonwealth Ct. 564, 549 A.2d 258 (1988). In such situations, which fall squarely within the provisions

of Section 306(d), benefit payments for the total disability precede those awarded for the specific loss.

While it is clear that the section relates to separate injuries resulting from the same incident, neither party here has cited, nor has our research revealed, any Pennsylvania case law dealing precisely with the legal question before us: whether or not an award for specific loss benefits pursuant to Section 306(c) of the Act, resulting from one injury, may be received concurrently with total disability benefits pursuant to Section 306(a) of the Act, 77 P.S. § 511, which result from a completely separate and unrelated injury.

■ The Act provides for compensation under these general classifications: total disability, partial disability, and disability resulting from permanent injuries. Total and partial disability are provided for under Sections 306(a) and (b), 77 P.S. §§ 511, 512, which contain payment schedules dependent upon the extent of the disability, and reflect an incapacity to perform one's duties and the loss of earning power resulting from the injury. *Reed v. Workmen's Compensation Appeal Board,* 52 Pa.Commonwealth Ct. 325, 415 A.2d 974 (1980), *rev'd on other grounds,* 499 Pa. 177, 452 A.2d 997 (1982). Benefits provided in Section 306(c) are statutorily prescribed amounts which are intended to include all disability emanating from or connected with the loss of or permanent injury to a member. *Id.* Such "specific loss" benefits are not based on a loss of earning power, but on the loss of use of a particular member. Thus, an employee may receive specific loss benefits even while receiving full wages. In such a situation the employee may, for a specified period of time, receive wages and benefits in excess of his normal earnings. Alternatively, total disability benefits last only until the employee returns to work, since they are designed to compensate for the employee's inability to earn wages.

■ The language of Section 306(d), set forth above, specifically refers to multiple injuries sustained in the same incident. In construing the statute, we note that the "provi-

sions of the [Act] are remedial in nature and are to be liberally construed with borderline interpretations resolved in favor of the injured employee." *Turner v. Jones & Laughlin Steel Corp.*, 479 Pa. 618, 629, 389 A.2d 42, 47 (1978). Here, we find that the Legislature's use of the phrase "at the time of *the* injury" indicates its intention that the section should operate to cover cases where multiple damages result from the same injury. While total disability benefits precede specific loss benefits when the injuries result from the same occurrence, because the injuries here were not sustained in the same incident, they do not fall within the provisions of Section 306(d). Accordingly, we find no error of law on the part of the referee.

In sum, based on our careful review of the record, we find that there is substantial competent evidence to sustain the referee's findings of fact that Claimant suffered a permanent loss of use of his right thumb for all practical intents and purposes. We shall modify the Board's order to provide that the interest on the compensation payable to Claimant shall begin to run twenty-one days from the date Employer received notice of the specific loss of use. Finally, we find no error of law in the referee's award of concurrent benefits for the specific losses at issue.

For the foregoing reasons, we hereby modify the award to reflect interest payments beginning twenty-one days after January 26, 1984, and affirm the Board's order in all other respects.

## ORDER

AND NOW, this 19th day of July, 1989, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed as modified, in accordance with the provisions of the foregoing opinion.

CRUMLISH, Jr., President Judge, dissents.