**SHARON STEEL CORPORATION,**
Petitioner,

v.

**WORKERS' COMPENSATION
APPEAL BOARD (FRANTZ),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 25, 2000.
Decided Jan. 15, 2002.

Robert A. Loch, Pittsburgh, for petitioner.

Susan Paczak, Pittsburgh, for respondent.

Before DOYLE, President Judge,[1] FRIEDMAN, Judge, MIRARCHI, Jr., Senior Judge.

DOYLE, President Judge.

Sharon Steel Corporation (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming, as modified, an order of a Workers' Compensation Judge (WCJ). The WCJ granted the petition of Ervin Frantz (Claimant) to review his compensation benefits, concluding that Claimant had established separate and distinct injuries to his left wrist, left hip, and back, along with traumatic amputations of his right leg and left foot, and awarded specific loss, partial disability and total disability benefits, including the concurrent payment of partial disability and specific loss benefits.

The Board essentially affirmed the WCJ's order in a December 19, 1997 decision, but modified the order because the Board concluded that partial disability benefits and specific loss benefits could not be paid concurrently. Following reargument, the Board determined that concurrent partial disability and specific loss benefits *were* available to Claimant and awarded Claimant total disability benefits from April 7, 1988 until August 19, 1989, specific loss and partial disability benefits from August 20, 1989 through October 10, 1992, and total disability benefits from October 11, 1992 into the future.

Employer, on appeal, contends (1) that an award of specific loss benefits and partial disability benefits at the same time is prohibited under Sections 306(b) and (d) of the Workers' Compensation Act (Act);[2] (2) that Claimant failed to carry his burden of showing that his additional injuries arose and were disabling during his brief return to work; and (3) that the Board exceeded its powers by granting relief beyond that requested.

On April 7, 1988, Claimant, who was employed as a "hook man," was seriously injured when he was run over by a train in the course of his employment. An April 19, 1988 Notice of Compensation Payable (NCP) was filed that indicates that Claimant sustained a "traumatic amputation of [the] right leg above [the] knee and left foot at [the] metatarsal area." Specific loss payments were determined to comprise the maximum rate of $377.00 per week commencing April 15, 1988, to run for 710 weeks (660 weeks for loss of his right leg and left foot and 50 weeks for Claimant's healing period). A supplemental agreement (SA) was executed on Janu-

---

1. The decision in this case was reached prior to the date that President Judge Doyle assumed the status of Senior Judge on December 31, 2001.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 512, 513.

ary 10, 1989, advancing Claimant $16,000 for the purchase of a vehicle and reducing his benefits to $327.00 per week for a limited period of 320 weeks, resuming at the $377.00 per week benefit rate thereafter. (WCJ's Decision, Finding of Fact No. 5.)

Claimant subsequently returned to modified work for Employer on August 20, 1989, in a light-duty capacity. He was initially assigned to a job operating a truck scale and later accepted a position with responsibility for entering numbers into a computer. Claimant was laid off on October 10, 1992, for economic reasons and has not worked since.

On February 22, 1993, Claimant filed a petition to review his compensation benefits alleging that erroneous information was contained in the NCP and SA, and further asserting that he was entitled to total disability benefits due to his lay-off because Employer's plant was shut down. Claimant maintained that he had suffered injuries which were separate and distinct from the work injury for which he had received specific loss benefits. He also asserted that he was entitled to total disability benefits from the date of his injury to his return to work, partial disability benefits during his period of modified employment, and total disability benefits as of the date of his lay-off. Employer filed a timely answer denying the allegations.

At the WCJ's hearing, Claimant testified that he sustained "a compound fracture of his left femur/hip, a broken left arm above the wrist, three broken ribs, and internal injuries" in addition to his work-related amputations. He stated that he underwent surgery for the fractures in his left hip and left arm, introducing hospital records in support of his statement. He also testified that he experiences "pain, burning and numbness in the bottom of his left leg; lower back pain; and cramps and constant stiffness in the left hand." Although he indicated that he no longer suffers from rib problems, he continues to undergo treatment and remains on medications. He testified that while he would welcome suitable work, his abilities are limited. He has particular difficulty during inclement weather, which affects his mobility. The WCJ accepted Claimant's testimony as credible and persuasive.

In further support of his petition, Claimant presented the deposition testimony of Mounir Awad, M.D., board certified in general surgery, who testified that Claimant had extensive injuries above and beyond his amputations. He testified that Claimant had "intra-abdominal injury; bleeding; chest injuries; multiple rib fractures with lung contusion; ... and multiple lacerations and contusions. ...." (Finding of Fact No. 20.) Dr. Awad recounted an initial medical treatment history whereby Claimant was resuscitated, underwent the amputations and at least six additional surgeries for treatment of infections and installation of plates and screws in his hip. Dr. Awad also indicated that over the course of his treatment of Claimant, Claimant continued to complain of low back, leg, wrist and hip pain. Dr. Awad stated that, although Claimant should not lift anything over twenty-five pounds and should restrict the use of his arm and wrist, he had deferred a final analysis of Claimant's work restrictions pending evaluation by an orthopedic surgeon.

Also in support of his petition, Claimant presented the deposition testimony of Barry L. Riemer, M.D., board certified in orthopedic surgery, who performed an independent medical evaluation of Claimant on February 7, 1994. Dr. Riemer examined Claimant, took a history, reviewed medical records and ordered x-rays. He indicated that the x-rays revealed well-healed fractures of the wrist and hip, and a

"healed L1 compression fracture of the lumbar spine" thus indicating that Claimant's back had been broken in the accident.[3] (Finding of Fact No. 39.) It was Dr. Riemer's opinion that Claimant was severely disabled based on his hip fracture alone. Dr. Riemer indicated that a bubble of bone has formed in the femur repair area, which is indicative of the amount of muscle damage that Claimant sustained. He opined that Claimant's hip condition causes him to fall easily and is evidenced by Claimant's low back, buttock, hip and leg pain. Dr. Riemer stated that Claimant's amputations were only marginally responsible for the extent of Claimant's back problems. He indicated that a patient can remain erect and stable after multiple amputations only if there was no hip injury. It was Dr. Riemer's opinion, to a reasonable degree of medical certainty, that Claimant should be restricted to sedentary work of limited duration because the bubble of bone is causing, and will continue to cause, him increasing difficulty. Dr. Riemer also opined that Claimant cannot stand as he "tips from side to side and cannot hold himself in a level position." (Finding of Fact No. 43.)

In opposition to Claimant's petition, Employer presented the deposition testimony of John W. Lehman, M.D., a board certified orthopedic surgeon, who conducted an independent medical evaluation of Claimant on September 22, 1993. The essence of Dr. Lehman's testimony was that Claimant's symptoms stemmed from his amputation and the adjustment that was required of Claimant in functioning with a prosthesis. However, the WCJ found that Dr. Lehman's testimony was equivocal and rejected it as unworthy of belief. The WCJ specifically referenced Claimant's numerous surgeries, other than the amputations, to indicate that Claimant sustained severe back, left hip and left wrist injuries, and concluded that those injuries were separate and distinct work-related injuries. The WCJ further found that, as the result of these separate and distinct injuries, Claimant could not return to his pre-injury job, but did return to a light-duty job (August 20, 1989 to October 10, 1992), and was still partially disabled when he was laid off from that job. The WCJ, therefore, granted Claimant's petition and amended the NCP to include injuries to Claimant's left wrist, left hip and back. The WCJ also directed Employer to pay Claimant partial disability benefits from August 20, 1989 through October 10, 1992, and total disability benefits from October 11, 1992 forward. Lastly, the WCJ suspended Claimant's specific loss benefits effective October 11, 1992, and directed that, at the end of the period of total disability, when Employer is required to resume payment of specific loss benefits, Employer would be entitled to a credit for specific loss benefits already paid.

Employer appealed to the Board, which first concluded that Claimant could not receive benefits for partial disability and specific loss at the same time, but on reconsideration concluded that both types of benefits were available to Claimant on a concurrent basis. Employer's appeal to this Court ensued.[4]

---

3. Dr. Riemer did concede on cross examination that no diagnosis of L1 compression fracture had been made at the time of the incident.

4. This Court's standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.),* 684 A.2d 673 (Pa.Cmwlth.1996). It is the purpose of the reviewing board and/or appellate court to review the WCJ's conclusions of law, while at the same time ascertaining that the facts

 It is well established that in matters involving specific loss claims, a claimant who sustains an injury that is compensable under Section 306(c) of the Act, 77 P.S. § 513 (relative to specific loss calculations), is not entitled to compensation beyond that specified in that section even though he may be totally disabled by the injury. *Crucible, Inc. v. Workmen's Compensation Appeal Board (Pope)*, 120 Pa. Cmwlth. 564, 549 A.2d 258 (1988). The exception to this rule, found in Section 306(d), 77 P.S. § 513, is when a claimant may receive benefits for injuries which are separate and distinct from those which normally flow from the specific loss injury.[5] *Id.* The Supreme Court in *Killian v. Heintz Div. Kelsey Hayes*, 468 Pa. 200, 360 A.2d 620 (1976), set the standard for this determination in stating:

> '[W]here it is claimed that some other part of the body is affected, it must definitely and positively appear that it is so affected, as a direct result of the permanent injury; the causal connection must be complete, and, further the disability must be **separate and distinct from that which normally follows an injury under [Section 306(d)]**, and must endure beyond the time therein mentioned. There must be a destruction, derangement or deficiency in the organs of the other parts of the body.'

*Killian*, 468 Pa. at 207, 360 A.2d at 624 (quoting *Lente v. Luci*, 275 Pa. 217, 221–22, 119 A. 132, 133 (1922)) (emphasis added). While injuries that flow from the specific loss injury are considered compensated under specific loss benefits, injuries that are separate and distinct from the specific loss injury are eligible for their own benefits. *LaChina v. Workmen's Compensation Appeal Board (Dana Corp.)*, 664 A.2d 204 (Pa.Cmwlth.1995). *See also, City of Scranton v. Workmen's Compensation Appeal Board (Rideski)*, 536 Pa. 161, 638 A.2d 944 (1994); *BCNR Mining Corp. v. Workmen's Compensation Appeal Board (Hileman)*, 142 Pa.Cmwlth. 588, 597 A.2d 1268 (1991), *petition for allowance of appeal denied*, 530 Pa. 646, 607 A.2d 256 (1992).

 In the instant matter, and where only one accident occurred, the WCJ correctly determined that the injuries to Claimant's left wrist, left hip and back were separate and distinct injuries. Substantial evidence[6] for this conclusion is found in the testimony of Dr. Awad, credited by the WCJ, wherein he relates the various surgeries to repair Claimant's left hip and left wrist, as well as Claimant's extensive history of back pain and related problems. Dr. Riemer, also credited by the WCJ, testified unequivocally that Claimant "has a hip problem, not a prosthetics problem." (Finding of Fact No. 49.)

 Employer avers that it is clear error for the Board to conclude that

---

found by the WCJ are supported by substantial evidence.

5. Section 306(d) states in pertinent part:
 Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in [Section 306(c)] of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the em-

ploye shall not receive compensation provided in [Section 306(c)] of this section for the specific healing period.
77 P.S. § 513(25).

6. Even though there may be evidence which might indicate a contrary conclusion, the decision of the WCJ must be affirmed if substantial evidence is presented to support the WCJ's finding. *Toth v. Workers' Compensation Appeal Board (USX Corp.)*, 737 A.2d 838 (Pa.Cmwlth.1999).

Claimant was entitled to receive partial disability and specific loss benefits simultaneously, citing *Turner v. Jones & Laughlin Steel Corp.*, 479 Pa. 618, 389 A.2d 42 (1978), and argues that "where an employee is entitled to both specific loss and disability benefits for separate and distinct injuries, he or she is only entitled to receive specific loss benefits *after* the entitlement to **total disability** benefits ceases." (Employer's Brief, p. 15.) (Emphasis added.) But nothing in Section 306(d) of the Act specifically states that a claimant cannot receive specific loss benefits and **partial** disability benefits simultaneously.

Our Supreme Court interpreted Section 306(d), 77 P.S. § 513, and its *Turner* decision in *City of Scranton* by indicating:

> Contrary to Appellee's arguments, Section 306(d) merely sets the timetable for when payments of specific loss benefits are to begin. The section does not explain or define when an injured employee is entitled to payments or when a period of temporary total disability "ends" but **only requires that any additional payments for other injuries begin at the end of the temporary *total* disability.** Appellee argues, however, that we determined in *Turner v. Jones and Laughlin Steel Corp.*, 479 Pa. 618, 389 A.2d 42 (1978), that the "end" of a temporary total disability can only occur by an eventual healing or natural termination and that, without such an "end" ... the entitlement to specific loss benefits cannot ripen. This is a misreading of Turner.

*City of Scranton*, 536 Pa. at 165, 638 A.2d at 946 (emphasis added).

We also find our decision in *Frank Irey, Jr., Inc. v. Workmen's Compensation Ap-*

*peal Board (Klemencic)*, 67 Pa.Cmwlth. 512, 448 A.2d 647 (1982), instructive.[7] There, the claimant was awarded specific loss benefits and partial disability benefits where he had sustained the loss of the use of his left hand and separate and distinct injuries to his face, mouth, left elbow and left leg. Similarly, we held in *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 127 Pa.Cmwlth. 553, 562 A.2d 419 (1989), *petition for allowance of appeal denied*, 525 Pa. 648, 581 A.2d 574 (1990), that a claimant could receive specific loss benefits resulting from one accident concurrent with total disability benefits that were the result of another, separate accident. In the instant matter, Claimant underwent a period of temporary total disability, then subsequently returned to work. At the time he returned to work, Claimant was eligible for partial disability benefits, because his wages were below his pre-injury wages. Claimant's return to work "ended" his period of temporary *total* disability, and he was eligible for partial disability *as well as* specific loss benefits. This is consistent with Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a), and with current case law.

Accordingly, we affirm the order of the Board in this matter.

## *ORDER*

**NOW,** *January 15, 2002,* the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, concurring.

The major issue confronting the court in this case is whether, under the Workers'

---

7. Our attention has been directed to the decision in *Vernon Sanders v. Irving Shoes*, 12 PAWCLR (LRP) 1066 (WCAB A96–2005, 1997), which, while not precedential, resulted in an award of specific loss benefits, concurrent with partial disability benefits.

Compensation Act (Act),[1] Ervin Frantz (Claimant) can receive specific loss benefits concurrently with partial disability benefits. The majority holds that these benefits can be paid to Claimant concurrently, and I concur in this result. However, I write separately because I cannot accept the majority's analysis and the confusion that this analysis likely would engender.

As indicated by a notice of compensation payable (NCP), Claimant suffered a traumatic amputation of his right leg and left foot in an unfortunate accident on April 7, 1988 and, as a result, received specific loss benefits pursuant to section 306(c) of the Act, 77 P.S. § 513. In August of 1989, Claimant returned to light-duty work, but he was laid off in October of 1992 for economic reasons. Claimant subsequently filed a petition to review his compensation benefits, alleging that he was entitled to disability benefits because he sustained injuries in the 1988 accident above and beyond the injury for which he received specific loss benefits. Following a hearing on the matter, the WCJ found: that Claimant sustained severe injuries to his left wrist, left hip and back in the 1988 accident which were separate and distinct from Claimant's amputations; that these other injuries prevented Claimant from returning to his pre-injury job; and that Claimant was still partially disabled by these other injuries when he was laid off from the modified position he held between August 20, 1989 and October 10, 1992. As discussed by the majority, substantial evidence for these findings exists in the competent credible testimony of Claimant's medical experts, thus establishing Claimant's entitlement to both specific loss benefits and disability benefits.

The more difficult issue involves Sharon Steel Corporation's (Employer) challenge to the way these benefits were to be paid to Claimant;[2] specifically, Employer argues that Claimant was not entitled to receive partial disability and specific loss benefits simultaneously. This question implicates section 306(d) of the Act, 77 P.S. § 513, which provides the compensation payment schedule for claimants who, like Claimant here, sustain one of the permanent injuries enumerated in section 306(c) and, at the same time, receive a separate disabling injury.[3]

> Section 306(d) provides in relevant part: Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries enumerated in [section 306(c)], the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries, but in that event the employe shall not receive compensation provided in [section 306(c)] for the specific healing period. . . . .

77 P.S. § 513(25).

According to the timetable set forth in section 306(d), a claimant's entitlement to

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 1–1041.4, 2501–2626.

2. As stated by the majority, the WCJ granted Claimant's petition and amended the NCP to include Claimant's wrist, hip and back injuries. In addition, the WCJ directed Employer to pay Claimant partial disability benefits from August 20, 1989 through October 10, 1992, and total disability from October 11, 1992 forward. Finally, the WCJ suspended Claimant's specific loss benefits effective October 11, 1992 and directed that specific loss payments would resume at the end of the period of total disability, when Employer would be entitled to a credit for specific loss payments already paid.

3. Section 306(d) also deals with the way payments are made when a claimant suffers two or more specific loss injuries in the course of a single accident.

payments of specific loss benefits begins only when the period of temporary total disability for other, separate injuries ends. 77 P.S. § 513. Clearly then, under section 306(d), Claimant cannot collect payments for **total** disability and specific loss at the same time. The question presented by Employer here is whether section 306(d) also precludes concurrent payments of **partial** disability and specific loss benefits. I believe the analysis is quite straightforward.

As the majority states, "nothing in Section 306(d) of the Act specifically states that a claimant cannot receive specific loss benefits and **partial** disability benefits simultaneously." (Op. at 9) (emphasis in original). Further, our supreme court has held that a period of temporary total disability may "end," thereby triggering entitlement to specific loss benefits, even if the disability does not cease during the employee's lifetime. *See City of Scranton v. Workmen's Compensation Appeal Board (Rideski)*, 536 Pa. 161, 638 A.2d 944 (1994). Accordingly, I agree with the majority's ultimate holding that, "consistent with Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a), and with current case law, .... Claimant's return to work 'ended' his period of temporary total disability, and he was eligible for partial disability as well as specific loss benefits." (Op. at 10.)

I submit, however, that the majority gains nothing when it goes beyond this already complete analysis and delves into a consideration of section 306(c) of the Act (relative to specific loss calculations); indeed, I believe that section 306(c) is irrelevant here.

Unlike total and partial disability, specific loss is not tied to earning power. Nevertheless, specific loss is the exclusive award for all disability, i.e., diminished earning capacity, *emanating from or con-*

*nected to* the loss of, or permanent injury to, the body part. Thus, the majority is correct that, as a general rule, "in matters involving specific loss claims, a claimant who sustains an injury that is compensable under Section 306(c) of the Act .... is not entitled to compensation beyond that specified in that section even though he may be totally disabled *by the [section 306(c)] injury. Crucible, Inc. v. Workmen's Compensation Appeal Board (Pope),* 120 Pa. Cmwlth. 564, 549 A.2d 258 (1988)." (Op. at 7) (emphasis added). However, I would point out that, under the explicit terms of the statute, the compensation provided in section 306(c) is the exclusive compensation available only with respect to disability *resulting from the specified permanent injuries.* The rule is of no concern in cases where, as here, the claimant establishes entitlement to both specific loss and disability benefits as a result of *unrelated* injuries, and it is only the payment schedule under section 306(d) that is questioned.

In needlessly discussing the exception to section 306(c)'s general rule of exclusivity, the majority creates a further problem by stating, "The exception to this rule, *found in Section 306(d),* 77 P.S. § 513, is when a claimant may receive benefits for *injuries* which are separate and distinct from those which normally flow from the specific loss injury." (Op. at 7) (emphases added). The majority then goes on to quote our supreme court's decision in *Killian v. Heintz Div. Kelsey Hayes,* 468 Pa. 200, 360 A.2d 620 (1976), in turn, quoting *Lente v. Lucci,* 275 Pa. 217, 119 A. 132 (1922), as setting the standard for determining whether this *"section 306(d) exception"* applies. (Op. at 7) (emphasis added).

Initially, I must disagree with the majority's statement that section 306(d) provides the exception to the rule of exclusivity set forth in section 306(c). As stated, section 306(d) relates only to the specifics

of payments, describing how awards are to be made when more than a specific loss has been suffered in a single accident. In fact, the exception referred to by the majority is found, not in section 306(d), but in the *Lente* decision itself.[4] In that case, the court recognized that there may be occasions where other parts of the body have been injured or destroyed *as a result of the permanent injury*. The court determined that, under certain circumstances, such additional injury may be compensable under section 306(a), 77 P.S. § 511, relating to total disability, or section 306(b), 77 P.S. § 512, relating to partial disability; the court then went on to set the standard for this determination.

> As stated, section 306 includes all disability emanating from or connected with a permanent injury to the member mentioned, but it must not be understood that compensation will be denied if the physical structure of the body, distinct from the member, *is affected by such permanent injury*. Compensation may be made for an injury to, destruction or affection of, other organs or parts of the body *produced by the permanent injury*, causing a disability separate, apart and distinct from that mentioned in [section 306(c)]. This may be under [section 306(b)], or, if total disability, under [section 306(a)]. .... But, in these cases, where it is claimed that some other part of the body is affected, it must definitely and positively appear that it is so affected, *as a direct result of the permanent injury*; the causal connection must be complete, and, further, the disability must be separate and distinct from that which normally follows an injury under [section 306(c)]. ....

*Lente*, 275 Pa. at 221–22, 119 A. at 133–34. (Emphasis added.) In other words, when a claimant sustains an injury compensable as a specific loss, he or she receives no additional compensation for any disability emanating from the permanent injury; the exception being that additional compensation may be granted for an injury to another part of the body which directly results from that permanent injury but which causes a disability separate and distinct from that which normally follows the specific loss.[5] That is not this case.[6]

---

**4.** Neither *Lente* nor *Killian* ever mention section 306(d); nevertheless, in the majority opinion, the quote from *Killian* contains a bracketed reference to section 306(d). I believe that it is section 306(c), not section 306(d), which should appear in those brackets.

**5.** Based on the wording in *Lente*, I must again take issue with the majority's statement that "the exception to this rule ... is when a claimant may receive benefits for *injuries* which are separate and distinct from those which normally flow from the specific loss injury." (Op. at 7) (emphasis added). To the contrary, under the exception articulated in *Lente*, compensable *injuries* must directly result from the specific loss injury; however, they must cause *disabilities* which are separate and distinct from those which normally follow the section 306(c) injury.

**6.** In *Crucible*, we provide examples of cases applying the exception, citing *Painter v. Workmen's Compensation Appeal Board (Universal Cyclops)*, 91 Pa.Cmwlth. 59, 496 A.2d 907 (1985) (allowing compensation because hand-shoulder syndrome following loss of use of arm was independently disabling); *Penn Mar Foundries, Inc. v. Workmen's Compensation Appeal Board (Albright)*, 76 Pa.Cmwlth. 565, 464 A.2d 670 (1983) (allowing compensation in addition to specific loss for psychosomatic pain and pain in leg and hip due to inability to ambulate properly following partial foot amputation); *Rowan v. Workmen's Compensation Appeal Board*, 58 Pa.Cmwlth. 56, 426 A.2d 1304 (1981) (allowing for total disability from neuroma pain following partial amputation of three fingers); *Truck Lubricating & Washing Co. v. Workmen's Compensation Appeal Board*, 54 Pa.Cmwlth. 495, 421 A.2d 1251 (1980) (allowing compensation for disability from rare neuroma pain resulting from

Here, the disabling wrist, hip and back injuries that Claimant sustained in the April 1988 accident did not develop as a result of his specific loss; rather, Claimant incurred these other injuries in addition to the amputations; they had no connection whatever to Claimant's lost right leg and left foot. Therefore, the exception, articulated in *Lente* and repeated in *Killian*, is not relevant here. Claimant's petition was based on a claim that he was disabled due to other injuries sustained in the 1988 accident that were completely unrelated to the injury for which he received specific loss benefits. After confirming that the record supports this claim, we need do nothing more than look at section 306(d) to determine how these multiple benefits should be paid.

finger amputation). Further, in *Lente*, 275 Pa. at 221–22, 119 A. at 133, our supreme court provides that "a latent tubercular condition in another part of the body becoming active through the permanent injury" serves to illustrate when the exception to the rule of exclusivity in section 306(c) applies.

By discussing the exception to the rule of exclusivity in the present context, the majority opinion confuses two of the scenarios in which a claimant can establish entitlement to compensation under sections 306(a) or 306(b) in addition to specific loss benefits under section 306(c). In one scenario, illustrated by the cases cited above, the claimant suffers an injury that results directly from the specific loss but causes a disability separate and distinct from that which normally follows the permanent injury. This type of case requires application of the exception identified in *Lente*. In a second scenario, illustrated by the present case, the claimant suffers the specific loss of one body part and, during the same incident, sustains a separate disabling injury to a different body part. *See e.g., Frank Irey, Jr., Inc. v. Workmen's Compensation Appeal Board (Klemencic)*, 67 Pa.Cmwlth. 512, 448 A.2d 647 (1982). Yet a third scenario is described in *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 127 Pa. Cmwlth. 553, 562 A.2d 419 (1989), *appeal denied*, 525 Pa. 648, 581 A.2d 574 (1990), in which the claimant is involved in two different incidents, one resulting in the specific loss and the other resulting in a disabling injury to a different body part.