**Carl CREWS, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RIPKIN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 17, 1999.

Decided Jan. 19, 2001.

read into the record) and so advised objectors, that case is readily distinguishable from this.

Mark R. Schmidt, Media, for petitioner.

Marianne Henry, Philadelphia, for respondent.

Before SMITH and FLAHERTY, Judges, and JIULIANTE, Senior Judge.

FLAHERTY, judge.

Carl Crews (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed in part and reversed in part the order of the Workers' Compensation Judge (WCJ) that granted in part and denied in part Claimant's request for specific loss benefits and review of the injuries delineated by the notice of compensation payable (NCP). For the reasons set forth herein, we affirm in part and reverse in part.

The facts as found by the WCJ may be summarized as follows. On December 23, 1992, Claimant fell 30 feet from a two-story scaffold while working for Mitchel Ripkin (Employer). Employer issued an NCP that described the injuries as fractures of both wrists and unclear vision in the left eye. Claimant began receiving total disability benefits effective December 24, 1992. On February 28, 1995, Claimant filed a petition to review the NCP, alleging that the NCP did not list all of the injuries which Claimant received and also that he sustained a specific loss pursuant to Section 306(c) of the Workers' Compensation Act (Act).[1] Through his petition to review, Claimant alleges that the NCP failed to delineate the injuries he sustained as a result of his fall. Claimant contends that in addition to his ongoing wage loss disability attributable to his brain injury, he sustained two separate specific loss injuries, the loss of use of his left eye and the loss of use of his upper left extremity. Reproduced Record (R.R.) at 10a.

In support of his petition to review the NCP, Claimant presented the testimony of Menachem M. Meller, M.D., Employer's independent medical examination (IME) physician. Dr. Meller testified that Claimant's left hand was not functional, his left wrist was not moveable, any movement caused pain and the left shoulder was significantly painful and weak. Dr. Meller observed that Claimant suffered from poor cognition and seizures as a result of the head injury, which Claimant sustained in the fall on December 23, 1992. Overall, Dr. Meller opined that Claimant had sustained a complete loss of use of his entire upper left extremity for all practical intents and purposes as a result of the work-related fall on December 23, 1992. WCJ Decision and Order, August 29, 1997, Finding of Fact (F.F.) No. 5.

Claimant also presented the testimony of Andrea Laborde, M.D., a specialist in

---

**1.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626. Section 306(c) of the Act, 77 P.S. § 513, states in relevant part that:

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

. . . .

(3) For the loss of an arm, sixty-six and two-thirds per centum of wages during four hundred ten weeks.

77 P.S. § 513(3).

traumatic brain injuries, who testified regarding the damage to Claimant's brain and his left eye injury. Dr. Laborde opined that Claimant suffered a traumatic injury to both sides of the frontal lobe of the brain resulting in a limited ability to understand the severity of his injuries and to participate in treatment. F.F. No. 13. Dr. Laborde also testified that Claimant was blind in the left eye for all intents and purposes. F.F. No. 8. Claimant also testified. Employer did not present any evidence.

The WCJ credited the testimony of Claimant, Dr. Meller and Dr. Laborde. F.F. No. 11, 12, 13. The WCJ determined that in addition to the injuries set forth in the NCP, Claimant has also sustained: traumatic injury to the frontal lobe of the brain causing seizures and tremors in the lower extremities; damage to the optic nerve and resulting blindness in the left eye; and loss of function of the upper left extremity. F.F. No. 11. The WCJ specifically found that while Claimant sustained a loss of use of the upper left extremity for practical intents and purposes, there was no testimony addressing whether the December 23, 1992 fall and resulting upper left extremity disabilities caused "destruction, derangement or deficiency in the organs of the other part of the body ... which is separate and distinct from that which normally follows such an injury." F.F. No. 12.

Based on these factual determinations, the WCJ reached the following conclusion of law:

3. Based on the testimony of Dr. Meller, while Claimant established that Claimant has loss of use of his upper extremity for all practical intent [sic] and purpose, Claimant failed to establish that this injury resulted in disability separate and distinct from the disability for which Claimant is receiving total disability benefits and is not entitled to Section 306(c)(3) benefits.[2]

The WCJ then granted Claimant specific loss benefits for loss of use of his left eye, denied him benefits for loss of use of his upper left extremity and permitted him to continue to receive ongoing total disability benefits. The WCJ further found that Employer did not establish a reasonable contest and awarded Claimant his counsel fees against Employer. Both parties appealed. The Board affirmed the WCJ's award of specific loss benefits for the eye and affirmed the WCJ's denial of benefits for specific loss of the upper left extremity with continued ongoing total disability benefits. The Board reversed the WCJ's award of counsel fees to Claimant finding that Employer did establish a reasonable contest. From the Board's order, the Claimant petitions this court for review, asserting as error the denial of specific loss benefits for his upper left extremity and the denial of total disability benefits for his brain injury.[3]

2. Section 306(c)(3) benefits specifically cover loss of use of an arm. *See* Footnote 1 *supra.*

3. Neither party raises the issue as to this court's proper scope and standard of review. Both Claimant and Employer state it is whether an error of law was committed, constitutional rights were violated or whether necessary findings of fact were supported by substantial evidence. Claimant's brief at 2. Employer's brief at 2. However, that statement of this court's review is applicable only when both parties have presented evidence or where only the party with the burden of proof has presented evidence and won. *See Cerasaro v. Workers' Compensation Appeal Board (Pocono Mountain Medical, Ltd.),* 717 A.2d 1111 (Pa.Cmwlth.1998). Here, however, only

Claimant presented evidence. Moreover, as it was Claimant who filed the petition to review the NCP alleging that NCP was materially incorrect and seeking its modification, it was Claimant's burden to prove a material mistake. *Birmingham Fire Insurance Co. v. Workmen's Compensation Appeal Board (Kennedy),* 657 A.2d 96 (Pa.Cmwlth.1995)(the party seeking modification bears the burden of proving that a material mistake of fact or law was made at the time the NCP or agreement was executed). Because Employer presented no evidence and Claimant failed to persuade the WCJ on the issue of the specific loss of his upper left extremity, our review of the WCJ's factual determinations is limited to determining whether the WCJ capriciously disregard-

Regarding the upper left extremity specific loss claim, Claimant argues that the NCP's description of his upper extremity injuries as broken wrists constitutes a material mistake of fact, which he is entitled to amend. Claimant contends that § 306(c)(23) of the Act, 77 P.S. § 513(23), provides that workers who suffer multiple injuries including specific loss of a body part are entitled to structure their compensation and specific loss benefits to provide for the highest permissible compensation benefit. Claimant further asserts that he carried his burden of proving a specific loss of use of his upper left extremity for which he is entitled to specific loss benefits and that he is also entitled to continuing wage loss disability benefits attributable to his brain injury. Employer responds that the WCJ and the Board properly denied specific loss benefits because Claimant did not prove that the specific loss of his upper left extremity was separate and distinct from the disability for which he is receiving ongoing benefits. We agree with Claimant and conclude that the WCJ and the Board applied the wrong burden of proof in denying Claimant's petition for specific loss benefits for loss of use of his upper left extremity. We further conclude that Claimant is entitled to continuing disability benefits because his brain injury constitutes a separate and distinct injury caused by the same work-related incident.

Initially we note that our Supreme Court in *Reed v. Workmen's Compensation Appeal Board*, 499 Pa. 177, 183–84, 452 A.2d 997, 999–1000 (1982), held that § 306(c)(23) of the Act, 77 P.S. § 513(23), explicitly grants the Board the discretion to determine the optimum benefit available to a claimant under the Act. The *Reed* Court further stated that nothing in the Act requires that a claimant must be compensated under the schedule for total disability when he has met the burden of proof for specific loss compensation. *Id.* Accordingly, Claimant is entitled to have his upper left extremity injury benefit modified from a total disability benefit to a specific loss benefit provided that he demonstrates a material mistake in the NCP and carries his specific loss burden of proof.

We next observe the long-settled rule that when an injured worker suffers a specific loss, he may not receive any monetary compensation over and above that which he receives for the specific loss notwithstanding any disability (loss of earning capacity) resulting from the specific loss. *Richardson v. Workers' Compensation Appeal Board (American Surfpak)*, 703 A.2d 1069, 1071 (Pa.Cmwlth.1997); *Mathies Coal Company v. Workers' Compensation Appeal Board (Henry)*, 114 Pa.Cmwlth. 11, 538 A.2d 590, 594 (1988); *Casper v. State Workmen's Insurance Fund*, 132 Pa.Super. 96, 200 A. 186, 188 (1938). In order to establish that one has suffered a specific loss, one need prove only that either the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes. *See Killian v. Heintz Div. Kelsey Hayes*, 468 Pa. 200, 205 n. 3, 360 A.2d 620, 623, n. 3 (1976). Whether a person has suffered a specific loss is a question of fact to be resolved by the factfinder who in this case is the WCJ. *School District of Philadelphia v. Workmen's Compensation Ap-*

ed competent evidence. *Cerasaro*. A capricious disregard of evidence occurs when there is a willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge. *Tomczak v. Workers' Compensation Appeal Board (Pro Aire Transport)*, 667 A.2d 271 (Pa. Cmwlth.1995). We note that when only the burdened party presents evidence before the factfinder, the capricious disregard standard replaces the substantial evidence inquiry,

which is the appellate standard applicable to review of factual determinations when both parties present evidence. *Dana Corp. v. Workers' Compensation Appeal Board (Hollywood)*, 706 A.2d 396 (Pa.Cmwlth.1998). The mere fact that the burdened party fails to prevail and is the only party to present evidence before the factfinder, does not shield errors of law or constitutional violations from appellate review as set forth in 2 Pa.C.S. § 704.

*peal Board (Pittman),* 145 Pa.Cmwlth. 319, 603 A.2d 266 (1992), *allocatur denied,* 532 Pa. 659, 615 A.2d 1314 (1992). Here, Claimant presented the testimony of Dr. Meller who testified in detail concerning the problems Claimant has with his upper left extremity, see R.R. at pp. 43a–50a, and who opined to a reasonable degree of medical certainty that Claimant has suffered from a complete and permanent loss of use of the upper left extremity. See R.R. at 48a–49a. The WCJ found Dr. Meller's testimony in this regard credible. F.F. No. 12. The WCJ further found as a specific fact that the injuries to Claimant's upper left extremity "resulted in a loss of use of the upper left extremity for practical intent [sic] and purpose." F.F. No. 12. Thus, although Claimant met his burden of proving a specific loss of his upper left extremity pursuant to *Killian,* the WCJ erroneously denied specific loss benefits upon finding that:

> there was no testimony addressing whether the December 23, 1992 fall and resulting upper left extremity disabilities caused "destruction, derangement or deficiency in the organs of the other part of the body (the brain injuries/left eye blindness excluded since the fall caused that at the same time) which is separate and distinct from that which normally follows such an injury [sic, there are no ending quotation marks].

F.F. No. 12.

■ The source of the WCJ's error, which the Board perpetuated, arises out of the misapprehension of the admittedly confusing area of law pertaining to compensation for separate and distinct injuries arising out of a single work-related incident. There are two scenarios in which an injured worker may receive multiple compensation benefit awards for injuries arising out of a single work incident. In the first instance, a claimant may sustain a single work-related injury resulting in specific loss of a body part, which later causes disability to some other part of the body, and in the second instance, a claimant may sustain multiple, separate and distinct injuries from a single work-related incident.

■ Cases whose facts follow the pattern summarized in the first scenario must be analyzed under the standard set forth in *Lente v. Lucci,* 275 Pa. 217, 119 A. 132 (1922) and its progeny. *See Painter v. Workmen's Compensation Appeal Board (Universal Cyclops),* 91 Pa.Cmwlth. 59, 496 A.2d 907 (1985); *Mosier v. Workmen's Compensation Appeal Board (Jessop Steel Co.),* 144 Pa.Cmwlth. 527, 601 A.2d 1319 (1992); *Richardson,* 703 A.2d 1069. In *Lente,* a claimant had a work related injury to one of his eyes causing loss of sight in that eye. The claimant had previously lost his sight in the other eye unrelated to his employment with his then current employer. The claimant received specific loss benefits under § 306(c) of the Act, 77 P.S. § 513, but later the claimant claimed that instead of specific loss benefits he should receive total disability benefits since he was totally blind and could not work. The *Lente* Court acknowledged the general rule provided in § 306 of the Act, 77 P.S. § 513, which states that when an injured worker suffers a specific loss, he may not receive additional compensation beyond that which he receives for the specific loss notwithstanding any disability due to loss of earning capacity resulting from the specific loss. *Lente,* 275 Pa. at 219–20, 119 A. at 133. However, the Supreme Court went on to note that there is an exception to the general rule stating that compensation for disability will be granted where a claimant proves that when "some other part of the body is affected, it must definitely and positively appear that it is so affected, as a direct result of the permanent injury; the causal connection must be complete, and, further, the disability must be separate and distinct from that which normally follows an injury under [§ 306(c) ].... There must be a destruction, derangement or deficiency in the organs of the other parts of the body." *Id.* Stated more plainly, a claimant may collect disability benefits if he proves that his

specific loss injury thereafter *caused* a separate and distinct injury to a different part of his body. The *Lente* Court concluded that although it was sympathetic to the claimant's plight, his total disability due to blindness in both eyes was not the direct result of his work-related injury since the loss of sight in his other eye was unrelated to his employment. Accordingly, the claimant failed to prove that his specific loss of sight in one eye had not caused the destruction, derangement or deficiency of another part of the body. *Id.* 275 Pa. at 224, 119 A. at 134.

■ Conversely, § 306(d) of the Act governs cases which follow scenario two, such as the instant matter, where a single work-related incident produced multiple, separate and distinct injuries. Section 306(d) of the Act permits a claimant to prove that he sustained either disability or specific loss for each separate injury, provided that payment of specific loss benefits is withheld until after all disability benefits are terminated. 77 P.S. § 513. Section 306(d) of the Act provides in pertinent part:

> Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries [i.e., specific loss] enumerated in clause (c) of this section, the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries....

77 P.S. § 513. *See also Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak),* 127 Pa.Cmwlth. 553, 562 A.2d 419, 424 (1989), *allocatur denied,* 525 Pa. 648, 581 A.2d 574 (1990)(holding that § 306(d) specifically refers to multiple injuries sustained in the same incident and the General Assembly's use of the phrase "at the time of the injury" indicates *its* intention that *the* section should operate to cover cases where multiple damages result from the same injury event). Section 306(d) of the Act is therefore applicable to the instant matter where Claimant sustained separate and distinct specific loss injuries to his left eye and upper left extremity in addition to his separate and distinct brain injury. The error which necessitates reversal on this issue is that the WCJ and the Board decided this case under the *Lente* analysis, i.e., single specific loss injury, which thereafter causes a separate and distinct injury from that which normally follows the original injury, rather than § 306(d) of the Act, 77 P.S. § 513, which applies to a claimant that sustained multiple, separate and distinct injuries as a result of a single work-related incident. Accordingly, we reverse the Board's order to the extent that it affirmed the WCJ's denial of specific loss benefits for the loss of use of Claimant's upper left extremity.

■ We next turn to the question of whether Claimant carried his burden of proof regarding wage replacement disability benefits for his brain injury. As discussed at length above, when a claimant sustains multiple injuries from a single work incident where at least one injury results in specific loss, it is the claimant's burden to prove that he suffers a disability separate and apart from the specific loss, i.e., notwithstanding the specific loss, claimant suffers a loss of earning capacity in order to merit continuing disability benefits. *Mosier v. Workmen's Compensation Appeal Board (Jessop Steel Co.),* 144 Pa.Cmwlth. 527, 601 A.2d 1319 (1992). *See also Richardson,* 703 A.2d at 1071–72 ("where claimant seeks benefits for total disability [in addition to specific loss benefits], the claimant has the burden of proving that he has disability separate and apart from the permanent specific loss injury.... If the claimant cannot satisfy this burden, he is only entitled to benefits for specific loss."). Claimant contends that the WCJ credited his expert medical testimony, which unequivocally stated that his brain injury considered alone has rendered him totally disabled from his time of injury job. See R.R. 51a–53a, 69a–72a. The

WCJ made the following relevant findings of fact, which pertain to Claimant's brain injury:

1. In support of his Petition, Claimant testified that he fell approximately thirty (30) feet, landed on his head and cracked his skull, and broke both arms. As a result of the head injury, Claimant testified that he has left side headaches all the time. . . .

. . .

3. Claimant also testified to having seizures as a result of the work-related fall. It was noted that Claimant's left arm and lower extremities shook violently and continuously throughout Claimant's testimony. It appeared as if the shaking intensified the longer Claimant was at the hearing.

. . .

6. Dr. Meller further testified that based on his review of Claimant's medical records and observations during his physical examination, that Claimant also had poor cognition, suffered from seizures, and had tremors of both lower extremities. Dr. Meller presumed, based on the medical records reviewed, that these conditions stemmed from the head injury on December 23, 1992.

7. In further support of his Petition, Claimant presented the deposition testimony of his treating physician, Andrea Laborde, who focused her practice on traumatic brain injuries. Dr. Laborde began treating Claimant on January 19, 1993 and diagnosed him as having suffered a traumatic injury to both sides of the frontal lobe of the brain, which resulted in Claimant's limited ability to understand the severity of his injuries, to initiate treatment, or participate in therapy.

. . .

11. Claimant's testimony is found credible and accepted as fact that in addition to the injuries set forth in the NCP, Claimant has also sustained (1) traumatic injury to the frontal lobe of the brain, which caused seizures, tremors in the lower extremities, and numbness of the left side of the head and persistent headaches, (2) damage to the optic nerve and resulting blindness in the left eye, and (3) pain and loss of function of the left upper extremity.

12. The testimony of Dr. Meller, Defendant's [Employer's] IME physician, presented by Claimant is found credible and accepted as fact . . . there was testimony concerning Claimant's left upper extremity orthopedic condition being a separate and distinct reason from the brain injury for Claimant not being able to return to work. . . .

13. The testimony of Dr. Laborde is found credible and accepted as fact that Claimant sustained a fractured skull and damage to both sides of the frontal lob [sic] of the brain, which resulted in cognition problems, seizures, and lower extremity tremors.

F.F. 1, 3, 6, 7, 11–13.

██ The above findings of fact reflect that Dr. Laborde unequivocally opined within a reasonable degree of medical certainty that Claimant sustained a serious brain injury, which continues to affect his cognitive ability and produces seizures and tremors. See R.R. 67a–69a. Dr. Meller concurred with Dr. Laborde's opinion. See R.R. 52a. Both Dr. Meller and Dr. Laborde concluded that as a result of his cognitive impairment, seizures and tremors, Claimant would not be able to return to his time of injury job. The above findings of fact indicate that the WCJ found the testimony of Dr. Meller and Dr. Laborde credible. Accordingly, Claimant met his burden of proof regarding his disability resulting from his work-related brain injury. Our review of the record indicates that substantial evidence supports the WCJ's findings of fact pertaining to Claimant's brain injury. However, despite the determination that Claimant sustained a disabling brain injury, the WCJ did not consider this fact when devising Claimant's compensation award because of

the erroneous conclusion that Claimant should continue to receive total disability benefits for his upper left extremity injury rather than specific loss benefits as was Claimant's option pursuant to *Reed*, 499 Pa. at 183–84, 452 A.2d at 999–1000. In light of our reversal on the upper left extremity specific loss issue and the fact that Claimant carried his burden of proof regarding total disability resulting from his brain injury, we conclude that Claimant is entitled to receive total disability compensation benefits pursuant to § 306(a) of the Act. 77 P.S. § 511. However, while Claimant is entitled to receive both total disability benefits and specific loss benefits, he may not receive them simultaneously since each of his injuries arose from the same work incident. *St. Joseph Hospital v. Workers' Compensation Appeal Board (Ladd)*, 725 A.2d 1287 (Pa. Cmwlth.1999), *allocatur denied*, 560 Pa. 714, 743 A.2d 925 (1999). Accordingly, Claimant is entitled to receive specific loss benefits for his left eye and upper left extremity injuries, however, he is not entitled to receive said benefits until his total disability benefits have terminated.

In conclusion, the Board's order is reversed in so far as it denied Claimant specific loss benefits and allowed total disability benefits for the loss of use of his upper left extremity. The Board's order is further reversed in so far as it denied Claimant disability benefits attributable to his brain injury. The Board's order is affirmed insofar as it granted specific loss benefits for the loss of use of Claimant's left eye and insofar as it reversed the WCJ's determination that Employer failed to raise a reasonable contest.

### ORDER

AND NOW, this 19th day of January, 2001, the order of the Workers' Compensation Appeal Board (Board), dated June 8, 1999, is hereby reversed in part and affirmed in part. The Board's order is reversed to the extent that it denied Carl Crews (Claimant) specific loss benefits and

permitted ongoing disability benefits for the loss of use of his upper left extremity. The Board's order is further reversed to the extent that it denied Claimant disability benefits attributable to his brain injury. In all other respects the Board's order is affirmed. Claimant shall not collect specific loss benefits for loss of use of his left eye and upper left extremity until such time as his total disability benefits have terminated. This matter is remanded to the Board to remand to the Workers' Compensation Judge to calculate Claimant's total disability benefits in accordance with this opinion.

Jurisdiction relinquished.

Judge SMITH dissents.