IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Silvia Barrientos Molina,      :
            Petitioner      :
     :
     v.      : No. 1663 C.D. 2018
     : SUBMITTED: May 24, 2019
Workers' Compensation Appeal      :
Board (Maximum Labor, Inc.),      :
            Respondent      :


BEFORE:     HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: July 10, 2019

Silvia Barrientos Molina (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ). The WCJ denied Claimant's claim petition under the Workers' Compensation Act (Act)[1] seeking indemnity benefits for total disability in addition to specific loss benefits awarded under a previous claim

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 – 1041.4, 2501-2710.

petition relating to the partial loss of two fingers.[2] After thorough review, we affirm the Board's order.

## I. Background

In January 2015, Claimant sustained an injury when the index and middle fingers of her left hand were drawn into a machine in the course of her employment with Maximum Labor, Inc. (Employer).[3] Reproduced Record (R.R.) 165a-66a. The injury caused amputation of the tips of both fingers. *Id.*

Claimant filed a claim petition in April 2015 (2015 claim petition). A WCJ awarded Claimant specific loss benefits under the 2015 claim petition, for 50% loss of both fingers. R.R. 81a, 83a. Claimant complained of continuing pain and did not return to work thereafter. R.R. 194a.

In January 2016, a year after her original injury, Claimant underwent surgery after developing redness and swelling in the tip of the remaining portion of her left middle finger. The surgeon drained an infection, which was diagnosed as

---

[2] Specific loss benefits are paid where a claimant has lost the use of a body part. The benefit includes a statutorily mandated wage loss payment for the loss plus medical bills and an award of wages for the prescribed amount of healing time. Section 306 of the Workers' Compensation Act (Act), 77 P.S. § 513. No other benefits are payable, even if the loss of use causes a disability. *Pocono Mt. Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909 (Pa. Cmwlth. 2015). Notably, the specific loss benefits are payable even if the claimant goes back to work during the payment period. *Id.* (specific loss benefits are payable without regard to the effect of the loss on claimant's earning capacity). However, if the injury that causes the specific loss also results in total disability that is separate and distinct from the specific loss, this could be compensable by indemnity benefits under Section 306 of the Act, 77 P.S. § 511. *Rowan v. Workmen's Comp. Appeal Bd. (Anemostat Prods., Inc.)*, 426 A.2d 1304 (Pa. Cmwlth. 1981).

[3] The record reflects a dispute about the correct identity of Claimant's employer, but that issue is not before us in this appeal.

pseudomonas[4] resulting from a retained suture related to the surgery after Claimant's original amputation injury. RR. 104a, 127a.

In February 2016, Claimant filed a second claim petition (2016 claim petition) alleging her infection and ongoing pain were injuries separate and distinct from the amputation injury.[5] She sought indemnity for total disability in addition to the specific loss benefits at issue in the 2015 claim petition.

Claimant testified at a hearing in April 2016 in support of the 2016 claim petition. The record also includes a transcript of testimony Claimant provided in June 2015 in relation to the 2015 claim petition.[6]

At the April 2016 hearing, Claimant testified she did not return to work after her January 2015 injury because of the pain in her fingers. R.R. 194a. She asserted she had not felt able to perform her pre-injury job at any time after her original work injury. R.R. 194a. She stated she could not return to work because she needed fingernails to do her job, and she could not perform the work with two shortened fingers, which hurt and were numb. R.R. 198a-99a. She acknowledged she could perform some type of work. R.R. 201a. Notably, Claimant did not testify that her middle finger hurt more than her index finger, and she did not mention arm pain at all in her testimony.

---

[4] Pseudomonas is a common infection which is particularly likely to occur in incisions from surgical procedures. It is normally treated with antibiotics. *See* MEDICAL NEWS TODAY, https://www.medicalnewstoday.com/articles/322386.php (last visited June 18, 2019).

[5] Claimant initially alleged she also developed a neuroma as a separate and distinct injury. However, her expert medical witness concluded her pain pattern was not consistent with a neuroma and instead resulted from the infection. Reproduced Record (R.R.) 129a-30a, 138a. Claimant does not argue before this Court that she has a neuroma.

[6] When Claimant testified in June 2015 in relation to the 2015 claim petition, both claim petitions were pending.

Claimant submitted deposition testimony from her medical expert, Harris A. Ross, D.O. (Claimant's Medical Expert). Claimant's Medical Expert is board certified in physical medicine and rehabilitation, general practice, quality assurance utilization review, and case management. R.R. 123a. He is not an orthopedic surgeon, does not perform amputations, and does not perform retained suture revision surgery. R.R. 135a.

Claimant's Medical Expert began treating Claimant in April 2015. He stated she continued to have pain at that time in the amputation sites in both fingers. R.R. 128a. He believed that pain most likely went along with the amputation. R.R. 129a. She also had pain that radiated through her arm. *Id.*

Claimant's Medical Expert testified that from May 2015 to January 2016, Claimant's main complaint was pain in her left middle finger and her arm. R.R. 131a. In January 2016, he became concerned about redness in the tip of Claimant's left middle finger and made an appointment for her with a surgeon. R.R. 113a, 130a. After removal of the retained suture and treatment of the pseudomonas infection, the pain in Claimant's finger and arm persisted. R.R. 132a.

Claimant's Medical Expert opined that Claimant's radiating arm pain constituted "a new injury secondary to the retained suture and the ensuing pseudomonas infection that occurred." *Id.* He acknowledged the suture was there due to the amputation injury. R.R. 137a-38a. He opined the pain was caused by scar tissue formed as the infection healed. R.R. 132a. He agreed with Claimant that she was not able to return to her pre-injury job at any time after the original injury. R.R. 133a.

Notably, however, Claimant's Medical Expert's treatment notes concerning Claimant were not consistent with the opinion he expressed in his deposition

4

testimony. His treatment notes belied any connection between Claimant's arm pain and the January 2016 infection in her left middle finger.

In his initial note from April 2015, he stated Claimant reported that since the time of the amputation injury, she "had severe pain in those fingers and the hand and also in the entire wrist," and that upon touching the ends of the injured fingers, she had "shocking pain, which went up her arm." R.R. 107a. In his next note, from May 2015, he observed Claimant had "quite a bit of pain in her fingertips" and felt pain "from the fingertips all the way up her arm. . . ." R.R. 109a. In his October 2015 office note, he again observed Claimant complained of pain in her left hand, especially the ends of "the second and third fingers," and that the pain traveled "all the way up her arm. . . ." R.R. 111a. Thus, Claimant's Medical Expert's office notes indicated that Claimant was suffering the radiating arm pain from *both* injured fingers, not just the middle finger. Further, the office notes demonstrated that Claimant had the arm pain long before developing the infection in her middle finger.

Claimant's Medical Expert's office note from January 2016, when he first observed the infection in her middle finger, did not distinguish more pain in the middle finger than in the index finger, merely stating Claimant was "complaining of quite a bit of pain in stumps of her fingers on the left." R.R. 113a. Moreover, although he noted her hand was painful, he did not mention any arm pain at that time. *See id.* His February 2016 office notes likewise made no mention of arm pain. *See* R.R. 114a-15a. His March 2016 office note indicated Claimant complained of "quite a bit of pain in the finger" as well as "pain in the hand, traveling up the arm." R.R. 116a. Based on his office notes as late as March 2016, a month before Claimant filed her 2016 claim petition, Claimant's Medical Expert was not linking her arm pain to the infection in her middle finger.

Employer offered no expert medical evidence.

The WCJ found Claimant's testimony was not credible or persuasive in establishing a period of disability separate and distinct from that resulting from the original amputation injury. WCJ's Op., 5/12/17, Finding of Fact (F.F.) No. 4. He observed that Claimant testified she could not perform her job because of shortened fingers and the absence of fingernails, both of which were consequences of the original injury. F.F. No. 5.

The WCJ also found Claimant's Medical Expert not credible or persuasive in establishing a new injury consisting of radiating pain from the infected retained suture. F.F. No. 6. The WCJ observed that the suture was there as a result of the original amputation surgery. *Id.*

The WCJ concluded Claimant failed to meet her burden of proving an injury separate and distinct from the original amputations.[7] WCJ's Op., 5/12/17,

---

[7] Notably, the June 2015 transcript contains the following colloquy between the WCJ for the 2015 claim petition and Claimant's counsel:

> MR. ABRAMSON: She's also claiming continued pain, continued pain in the fingers.

> JUDGE BECK: But there's no separate injury.

> MR. ABRAMSON: That's not - - no. It's from the same injury. She's still complaining of pain.

> JUDGE BECK: Right. But the Act states if there's one injury that takes it if it's reduced to a specific loss. Phantom pain, pain that's still there is not to be considered unless it's a separate injury. Whereas, [post-traumatic stress syndrome] might be considered a separate injury; however, the loss of use is a loss of use.

R.R. 168a.

Conclusion of Law No. 3. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant's petition for review in this Court followed.

## II. Issues

On appeal,[8] Claimant argues the Act allows her to receive total disability indemnity concurrently with specific loss benefits. She posits that since there was a specific loss of a portion of two fingers, any injury to the remaining portion of either finger is, by definition, separate and distinct from the amputation injury. She contends that such an injury, although resulting from negligent treatment of the original amputation injury, renders her eligible for total disability indemnity in addition to specific loss benefits.

## III. Discussion

In a workers' compensation case, the WCJ is the ultimate finder of fact, with exclusive authority to determine the credibility and weight of the evidence. *Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045 (Pa. Cmwlth.) (*en banc*), a*ppeal denied*, 189 A.3d 385 (Pa. 2018). The WCJ is free to accept or reject the testimony of any witness, including an expert, in whole or in part. *Id.*

We view the evidence in the light most favorable to Employer, as the prevailing party before the Board, and we give Employer the benefit of all inferences reasonably deducible from the evidence. *Id.* Our inquiry is not whether the record evidence would support findings different from those made by the WCJ, but whether there is substantial evidence in support of the findings actually made. *Id.*

---

[8] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045 (Pa. Cmwlth.) (*en banc*), a*ppeal denied*, 189 A.3d 385 (Pa. 2018).

In general, an injured worker who suffers a specific loss of use of a body part may not receive workers' compensation benefits beyond specific loss compensation, even if the specific loss also results in loss of earning capacity. *Crews v. Workers' Comp. Appeal Bd. (Ripkin)*, 767 A.2d 626 (Pa. Cmwlth. 2001). However, a claimant may receive additional compensation if she incurs a loss of earning capacity separate from her specific loss. *Id.* A compensable separate loss of earning capacity may occur where a work-related injury causes a specific loss and then, later, causes disability to a separate part of the body. *Id.* Thus, it is a separate disability, rather than a separate injury, that the claimant must demonstrate. *Pocono Mt. Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909 (Pa. Cmwlth. 2015) (citing *BCNR Mining Corp. v. Workmen's Comp. Appeal Bd. (Hileman)*, 597 A.2d 1268 (Pa. Cmwlth. 1991)). If a claimant cannot prove a separate disability, distinct from her specific loss, she is entitled only to specific loss benefits. *Id.* (citing *Richardson v. Workers' Comp. Appeal Bd. (Am. Surfpak)*, 703 A.2d 1069 (Pa. Cmwlth. 1997)).

A claimant alleging that the same injury resulted in both a specific loss and a separate disability must prove the separate disability is both a direct result of the specific loss injury and a separate result not normally following from such an injury. *Crews*. The separate loss a claimant must prove "does not include pain, . . . disability to work, or anything normally resulting from the permanent injury." *Sch. Dist. of Phila. v. Workmen's Comp. Appeal Bd. (Pittman)*, 603 A.2d 266, 268 (Pa. Cmwlth. 1992).

Here, the WCJ found neither Claimant nor Claimant's Medical Expert was credible or persuasive in satisfying Claimant's burden of proving a separate disability. The WCJ's findings were supported by substantial evidence and constituted no error of law.

Claimant's original injury was the amputation of the tips of two fingers. Because the amputation itself was the injury, Claimant reasons that any injury to the remaining part of a finger was necessarily separate and distinct from the amputation injury. Thus, Claimant asserts that logic dictates the infection in her middle finger was separate from the original injury. Claimant cites no authority in support of this argument. Therefore, it is waived. *Am. Rock Mechs., Inc. v. Workers' Comp. Appeal Bd. (Bik)*, 881 A.2d 54 (Pa. Cmwlth. 2005).

Moreover, the disability Claimant asserts is not the infection itself. Rather, the premise of the 2016 claim petition is that Claimant suffered new and disabling arm pain as a result of the infection in her finger. Therefore, she had the burden of proving both that the arm pain resulted from the infection and that the pain caused a new disability separate and distinct from that arising from the amputation. We agree with the WCJ's conclusion that Claimant failed to sustain her burden of proof.

The record is at best equivocal concerning Claimant's assertion that the 2016 infection in her finger caused radiating arm pain. Claimant herself did not testify that she suffered arm pain as a result of the infection in her finger. As discussed above, the testimony of Claimant's Medical Expert on that issue conflicted with his office notes. Those notes indicated Claimant complained of the arm pain throughout his treatment of her, not only *after* the infection developed. *See* R.R. 107a-16a. In addition, the office notes indicated Claimant's arm pain was connected to both fingers, not only the middle finger.[9] *Id*.

Further, neither Claimant nor Claimant's Medical Expert offered any testimony that Claimant's arm pain resulted in a new disability distinct from that

---

[9] Claimant's Medical Expert did note some increased pain in Claimant's middle finger relating to a portion of a fingernail growing in the stump of the finger. *See* R.R. 115a-16a. Neither party has raised that issue as having any relevance to the 2016 claim petition.

9

which arose from the amputation. Claimant's Medical Expert opined that the infection that developed from the retained suture in Claimant's left middle finger was a new injury, but he did not offer any testimony that Claimant incurred an additional disability as a result. *See* R.R. 131a-32a. He testified that in his opinion, Claimant was never able to return to her pre-injury job at any time after the amputation injury. R.R. 133a. He did not discuss her ability to perform any other work, either before or after the infection.

Claimant herself never mentioned her arm pain at all in her testimony. She stated that she could not do her pre-injury job because her fingers hurt and were numb, and she needed her fingernails to do that job. R.R. 194a, 198a-99a. She also acknowledged that she could do some sedentary work. R.R. 201a. She did not testify to any increased or new disability following the infection in her middle finger.

Thus, Claimant failed to demonstrate either a causal relationship between her arm pain and the infection in her finger or a separate and distinct disability arising from the arm pain. Accordingly, we find neither legal error nor lack of substantial evidence regarding the WCJ's conclusion that Claimant failed to sustain her burden of proof concerning the 2016 claim petition.

### IV. Conclusion

For the foregoing reasons, we affirm the Board's order.


_____
ELLEN CEISLER, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Silvia Barrientos Molina,                      :
                Petitioner          :
                                               :
           v.          :   No. 1663 C.D. 2018
                                                 :
Workers' Compensation Appeal          :
Board (Maximum Labor, Inc.),          :
                Respondent          :

# **O R D E R**

AND NOW, this 10th day of July, 2019, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
ELLEN CEISLER, Judge