# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clayton Norton,                         :
                    Petitioner          :
                                        :
            v.                          :   No. 411 C.D. 2019
                                        :   Submitted:  August 23, 2019
Workers' Compensation Appeal Board      :
(Northern Tier Solid Waste Authority),  :
                    Respondent          :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                    **FILED:  February 20, 2020**


            Clayton Norton (Claimant) petitions for review of an order of the
Workers' Compensation Appeal Board (Board), dated March 8, 2019.  The Board
affirmed the decision of a Workers' Compensation Judge (WCJ), granting
Claimant's review petition.[1]  For the reasons set forth below, we affirm the Board's
order.

            Claimant worked for Employer as a garbage truck driver.  On
January 9, 2014, Claimant sustained a work-related injury in the nature of fractures
to his left femur and fourth and fifth ribs when he was involved in a work-related

---

[1] The WCJ also denied two modification petitions filed by Northern Tier Solid Waste
Authority (Employer).  Employer's modification petitions are not relevant to this appeal, and,
therefore, we do not address them in this opinion.

motor vehicle accident. Employer accepted liability for Claimant's work-related injury by issuing a notice of temporary compensation payable, which subsequently converted to a notice of compensation payable (NCP) by operation of law. On December 27, 2016, Claimant filed a review petition, seeking to amend the description of his work-related injury set forth in the NCP to include, *inter alia*, depression and the loss of use of his left leg.

Before the WCJ, Claimant testified that, on January 9, 2014, he was driving a garbage truck for Employer along his regular route when the garbage truck slid on the ice- and snow-covered road, causing him to lose control of the garbage truck. (Supplemental Reproduced Record (S.R.R.) at 110b-11b.) The garbage truck slid off the road, crashed into some trees, and caught fire. (*Id.* at 111b.) Claimant's boss, who lives near the location of the accident, extinguished the fire before the first responders arrived at the scene. (*Id.* at 112b-14b.) Upon their arrival, the first responders extricated Claimant from the garbage truck and transported him to the hospital by medical helicopter. (*Id.* at 113b-14b.) Following the accident, Claimant underwent various medical treatments for the injury to his left leg, including multiple surgeries, physical therapy, in-home wound care, and skin grafts. (*Id.* at 114b-16b.)

At some point following the accident, Claimant returned to work for Employer in a light-duty position that Employer had created for him in the maintenance shop keeping track of parts and work orders. (*Id.* at 117b-18b.) Claimant performs this position for two hours per day and is able to stand and sit as needed. (*Id.* at 118b, 124b-25b.) Claimant explained that he returned to work because he was depressed and felt like he had nothing to offer. (*Id*. at 116b-17b.) Claimant also indicated that, prior to the January 9, 2014 work-related accident, he enjoyed hunting, fishing, and working on classic cars, but he no longer enjoys these

2

activities. (*Id*. at 120b-21b, 130b.) Claimant further explained that he continues to experience "snapping" and "grinding" in his left knee, neuropathy in his left foot, and a loss of feeling from the front of his left knee down into his foot. (*Id.* at 122b.) Claimant admitted, however, that he is able to drive a vehicle; walk on both legs, most of the time with the assistance of a cane; and travel up and down steps, but not very easily. (*Id.* at 125b-26b.)

Claimant presented the deposition testimony of Anthony Grippo, M.D., who is board certified in internal medicine and occupational medicine. (*Id*. at 32b.) Dr. Grippo began treating Claimant on January 15, 2015. (*Id*. at 33b.) Based on Claimant's injury and treatment history, Claimant's complaints, and his physical examination and evaluation of Claimant, Dr. Grippo opined that Claimant sustained and/or suffers from a crush injury to the distal femur with a fracture, compartment syndrome, pulmonary emboli, deep venous thrombosis, and sensory motor tibial neuropathy with respect to the left lower extremity, as well as depression. (*Id*. at 33b-37b, 47b.) Dr. Grippo recommended, *inter alia*, that Claimant seek psychological treatment for his depression and post-traumatic stress relative to the work-related incident. (*Id*. at 38b.) Dr. Grippo believed that Claimant thereafter treated with Dr. Lichtenstein, a clinical psychologist. (*Id*. at 39b.) Dr. Grippo also indicated that Claimant began taking antidepressant medication, which appeared to help Claimant with his depression. (*Id*. at 39b-40b.)

Dr. Grippo described Claimant's current condition as serious with a poor prognosis for improvement. (*Id*. at 44b.) He explained that Claimant continues to suffer from chronic pain and muscle weakness in the left lower extremity and has minimal to no use of his leg. (*Id*. at 44b, 92b-93b.) Dr. Grippo indicated that Claimant is permanently restricted to sedentary work limited to two hours per day,

3

five days per week. (*Id*. at 44b-45b, 49b, 92b.) Dr. Grippo nevertheless admitted that Claimant is able to ambulate with the assistance of a cane, use his left leg for balance, drive his personal vehicle, and climb stairs on a limited basis. (*Id*. at 49b-50b.) Dr. Grippo indicated that he continues to treat Claimant primarily for the crush injury to his left leg. (*Id*. at 47b.) He believed that Claimant also continues to treat with his primary care physician for depression. (*Id*. at 48b.) Dr. Grippo further testified that he has not placed any occupational restrictions on Claimant relative to his depression and that Claimant's current work restrictions relate solely to the crush injury to Claimant's left leg. (*Id*. at 50b.)

Claimant also submitted the deposition testimony of Richard Husband, D.O., who is board certified in family practice. (*Id*. at 4b.) Dr. Husband testified that he has been treating Claimant for over 20 years. (*Id*. at 5b.) With respect to Claimant's January 9, 2014 work-related incident, Dr. Husband indicated that Claimant continues to suffer from generalized weakness with muscle atrophy of the upper and lower left leg and loss of range of motion in the knee and ankle area, which causes Claimant to experience chronic pain with ambulation. (*Id*. at 5b-6b.) Dr. Husband believed that Claimant has reached maximum medical improvement with respect to the condition of his left leg and that Claimant has lost the functional use of his left leg. (*Id*. at 6b-7b.) Dr. Husband nevertheless admitted that Claimant is capable of walking with the use of a cane, driving a motor vehicle, climbing stairs on a limited basis, and using his left leg for balance. (*Id*. at 15b.) Dr. Husband recommended that Claimant continue with both physical therapy for maintenance of strength and evaluation by orthopedics to monitor for deterioration of the joints and neuromuscular aspect of the left leg. (*Id*. at 12b.) Dr. Husband also agreed with the

4

work restrictions placed upon Claimant by Dr. Grippo with respect to the injury to Claimant's left leg. (*Id*. at 7b-8b, 11b-13b, 16b.)

Dr. Husband testified that he has also treated and continues to treat Claimant for anxiety and mild to moderate depression that resulted directly from the trauma associated with Claimant's January 9, 2014 work-related injury and his resulting chronic disability. (*Id*. at 6b, 8b, 17b-19b.) In order to treat Claimant's depression, Dr. Husband prescribed medication. (*Id*. at 19b.) Dr. Husband did not refer Claimant to a psychologist or psychiatrist, and he was not aware, prior to Claimant telling him at the time of his deposition, that Claimant had treated with Dr. Lichtenstein. (*Id*. at 19b-20b.) Dr. Husband did not place Claimant under any work restrictions relative to his depression.[2] (*Id*. at 21b.)

At the final hearing conducted before the WCJ on November 16, 2017, the parties noted for the record that Employer's counsel had presented Claimant's counsel with a stipulation, wherein Employer acknowledged liability for most of the injuries set forth in Claimant's review petition, including depression. (Certified Record (C.R.) at Item No. 20; Notes of Testimony, 11/16/2017, at 11.) Claimant's counsel, however, refused to sign the stipulation, because Employer continued to contest, *inter alia*, the specific loss of use of Claimant's left leg. (*Id*. at 11-12.)

On March 21, 2018, the WCJ issued a decision and order, granting Claimant's Review Petition. Based upon Employer's express admissions as set forth

---

[2] Claimant also offered the narrative reports of David Cooper, M.D., who performed independent medical examinations of Claimant on two separate occasions. Dr. Cooper's findings and opinions are not relevant to this appeal, and, therefore, we do not address Dr. Cooper's narrative reports in this opinion.

Employer offered the deposition testimony of Roger M. Componovo, M.D., a board-certified orthopedic surgeon, and Jessa Nolte, a vocational rehabilitation specialist. The testimonies of Dr. Componovo and Ms. Nolte are not relevant to this appeal, and, therefore we do not address them in this opinion.

in the proposed stipulation and certain unrefuted medical evidence, the WCJ concluded that Claimant met his burden of proving that, in addition to the fractures of his left femur and fourth and fifth ribs, Claimant also sustained the following injuries as a result of the January 9, 2014 work-related incident: (1) mild anxiety and depression; (2) a crush injury to his left leg, including a skin graft and muscle atrophy; (3) deep vein thrombosis of the right leg with bilateral pulmonary emboli; (4) compartment syndrome, including five compartment fasciotomies; (5) a vascular injury (ischemia); (6) a left calf laceration of the gastrocnemius muscle; (7) a leg vein transplant; and (8) mild sensorimotor tibial neuropathy. As a result, the WCJ amended the description of Claimant's January 9, 2014 work-related injury to include these injuries. The WCJ also concluded that Claimant met his burden of proving that he sustained the loss of use of his left leg for all practical intents and purposes and awarded Claimant specific loss benefits for a period of 410 weeks. The WCJ determined, however, that Claimant failed to establish that any of his injuries constituted independent sources of disability separate and apart from the specific loss of use of his left leg. As a result, the WCJ awarded Employer a credit against Claimant's specific loss award for all disability benefits that Employer had previously made to Claimant. Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant now petitions this Court for review.

On appeal,[3] Claimant essentially argues that the WCJ and the Board committed an error of law by concluding that Claimant did not sustain a psychic injury that was separate and apart from the loss of use of his left leg. More

---

[3] Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated. *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

specifically, Claimant contends that, because Employer agreed to a stipulation that would have amended the description of his work injury to include a psychic injury and the WCJ's decision and order thereafter amended the NCP to include mild anxiety and depression, Employer had the burden of proving that Claimant was no longer disabled as a result of his mild anxiety and depression. Claimant further contends that Employer failed to meet its burden and, therefore, the WCJ should not have granted Employer a credit against his specific loss award for the disability payments that Employer had already paid to Claimant. In response, Employer argues that the WCJ and the Board properly concluded that Claimant failed to prove that he sustained a work-related disability due to his psychic injury that was separate and distinct from his specific loss. More specifically, Employer contends that Claimant, as the party who is seeking to amend the NCP and obtain both specific loss and disability benefits, had the burden of proving that his mild anxiety and depression caused him to suffer a disability separate and distinct from the loss of use of his left leg. Employer further contends that the Board properly affirmed the WCJ's decision and order because the WCJ's finding that Claimant did not sustain a work-related disability separate and distinct from the specific loss of his left leg is supported by substantial evidence of record—*i.e.*, Claimant presented absolutely "no medical evidence as to any separate or additional disability preventing [him] from working, aside from the disability caused by his left leg." (Employer's Br. at 29.)

Pursuant to Section 413(a) of the Workers' Compensation Act (Act),[4] "the WCJ may amend [or correct] the NCP at any time during litigation of any petition if the evidence shows that the injury sustained in the original work incident is different or more expansive than that listed in the NCP." *Harrison v. Workers'*

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 771.

7

*Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013), *appeal denied*, 92 A.3d 812 (Pa. 2014) (citing *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009)). A WCJ may also amend the NCP "if the claimant files a review petition and proves that another injury subsequently arose as a consequence of the original injury." *Id.* "The party seeking to amend the NCP has the burden of proving that the NCP is materially incorrect." *Id.*

Section 306(c) of the Act[5] authorizes the WCJ to award 410 weeks of compensation for the specific loss of a leg. A specific loss of a leg occurs when: (1) the claimant's leg is amputated; or (2) the claimant suffers a permanent loss of use of his leg for all practical intents and purposes. *Crews v. Workers' Comp. Appeal Bd. (Ripkin)*, 767 A.2d 626, 630 (Pa. Cmwlth. 2001). A claimant "who sustains a specific loss compensable under Section 306(c) of the Act is not entitled to additional compensation even though he may be totally disabled by the permanent injury." *Richardson v. Workers' Comp. Appeal Bd. (Am. Surfpak)*, 703 A.2d 1069, 1071 (Pa. Cmwlth. 1997). Section 306(d) of the Act[6] provides an exception to this general rule, which permits a claimant who has sustained "multiple injuries from a single work incident" to receive both specific loss and disability benefits if the claimant can prove that he "suffers a disability separate and apart from the specific loss, *i.e.*, notwithstanding the specific loss, [the] claimant suffers a loss of earning capacity in order to merit continuing disability benefits." *Crews*, 767 A.2d at 632.

---

[5] 77 P.S. § 513.

[6] 77 P.S. § 513. Section 306(d) of the Act provides, in pertinent part:

> Where, at the time of the injury the employe receives other injuries, separate from these which result in permanent injuries . . . the number of weeks for which compensation is specified for the permanent injuries shall begin at the end of the period of temporary total disability which results from the other separate injuries.

8

Here, Claimant appears to be confusing the burden of proof applicable to a suspension, modification, or termination petition with the burden of proof applicable to a review or claim petition, wherein a claimant is seeking an award of specific loss benefits. Contrary to Claimant's assertions, in the specific loss context, when a claimant is seeking to obtain both specific loss benefits and disability benefits, it is irrelevant whether an employer has accepted liability for or whether the WCJ has amended an injury description to include injuries that are separate and distinct from the specific loss. Under those circumstances, the burden of proof is always on the claimant to establish that any continued disability—*i.e.*, loss of earning power—is the result of an injury that is separate and distinct from the specific loss. *See Crews*, 767 A.2d at 632. While it is undisputed that Claimant sustained a work-related psychic injury, Claimant did not prove that he continues to suffer a loss of earning power relative to such psychic injury. Both Dr. Husband and Dr. Grippo specifically indicated that they did not place Claimant under any work restrictions with respect to Claimant's depression. (*See* S.R.R. at 21b, 50b.) For these reasons, we conclude that the WCJ and the Board did not commit an error of law by concluding that Claimant failed to meet his burden of proving that he sustained a work-related disability due to his mild depression and anxiety that was separate and distinct from the specific loss of use of his left leg.[7]

---

[7] Claimant also appears to suggest that Employer's willingness to stipulate that Claimant sustained additional injuries, including mild anxiety and depression, somehow shifts the burden to Employer to prove that Claimant is no longer disabled as a result of such injuries. We disagree. Just because an employer may be willing to stipulate to the amendment of the injury description to add additional injuries does not mean that the employer also agrees that any such additional injuries are disabling. An employer may choose to issue a "medical only" NCP, a notice of compensation denial, or a temporary notice of compensation payable, accepting that an injury occurred but disputing that there was a loss of earning power. *See Armstrong v. Workers' Comp. Appeal Bd. (Haines & Kibblehouse, Inc.)*, 931 A.2d 827, 831-32 (Pa. Cmwlth. 2007).

9

Accordingly, we affirm the Board's order.


                              _____

                              P. KEVIN BROBSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Clayton Norton, : 
      Petitioner : 
      : 
   v. :  No. 411 C.D. 2019
      : 
Workers' Compensation Appeal Board : 
(Northern Tier Solid Waste Authority), : 
      Respondent : 

## **O R D E R**

   AND NOW, this 20th day of February, 2020, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

              _____

              P. KEVIN BROBSON, Judge